**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry BROWN, Defendant–Appellant.**

No. 89–4129.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 2, 1990.
Decided Sept. 28, 1990.

Gary D. Arbeznik, Asst. U.S. Atty., Mark A. McClain, Gregory C. Sasse, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Michael G. Dane (argued), Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Before MILBURN and GUY, Circuit Judges; and JORDAN, District Judge.*

MILBURN, Circuit Judge.

Defendant-appellant Larry Brown had a loaded revolver tucked into his waistband when he was arrested for attempting to sell cocaine to a passing motorist in Cleveland, Ohio. He was convicted of possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). He argues in this appeal that the district court's supplemental jury instructions, given in response to a jury question, erroneously relieved the government of the burden of proving beyond a reasonable doubt that he carried his pistol in relation to his possession with intent to distribute cocaine. For the reasons that follow, we affirm.

## I.

On July 12, 1989, Cleveland Police detectives Michael Carosielli and Michael White, along with Sgt. Raymond Gercar, were patrolling an area of Cleveland known to have a high incidence of drug trafficking. As Sgt. Gercar drove their unmarked car on Case Court at approximately 5:40 p.m., he directed the detectives' attention to the defendant Brown, who was walking toward a Ford Escort that had stopped in the oncoming lane. They watched Brown approach the Escort from the sidewalk, re-

---

* Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

move something from a pocket, make a pouring motion into one of his hands, and show his hand to the female driver and lone occupant of the stopped car. Sgt. Gercar stopped the patrol car so close to the Escort that he could not open his driver's door. From that vantage point, the officers observed that Brown had what appeared to them to be nuggets or "rocks" of crack cocaine in his hand.

Detective Carosielli and Detective White got out of the car and Sgt. Gercar pulled it forward in order that he could get out. Detective Carosielli testified that Brown seemed to be "completely oblivious" to the presence of the officers as he and Detective White walked around the Escort and met on Brown's flanks. Brown was wearing a loose, lightweight jacket, and the officers could not tell if he was armed, so Detective Carosielli approached Brown with his service revolver drawn. He testified that he placed the revolver against Brown's shoulder and said, "police."

Brown immediately dumped the contents of his hands into the stopped car, straightened himself in a jerk, and moved his left hand toward his left hip. The detectives grabbed Brown's hands and pinned them to his back, and together they pinned Brown to the roof of the Escort. Detective White patted Brown's left hip and felt a large, firm bulge at the waist. He peeled back Brown's jacket and discovered a black vinyl carrying case tucked into the waist band of Brown's pants. Detective Carosielli handcuffed Brown, and Detective White removed the carrying case, opened it, and discovered that it contained a loaded .32 caliber revolver and thirty-two loose bullets.

Detective White then removed several rocks of crack cocaine from the lap and clothing of the female driver of the Escort, and ordered her out of the car. Upon searching the car, he discovered several more rocks. A total of fourteen rocks were seized in the arrest.

The driver, Shirley Linton, testified that she drove to Case Court to purchase crack cocaine for a friend, and that she stopped her car when she saw Brown. She testified that as he approached her, he opened a Tylenol bottle and poured out several rocks of crack cocaine into his hand. She further testified that when Brown finally noticed the officers, he dumped his rocks of cocaine into her lap.

Kyle Walton and Patrick Berarducci, agents with the United States Bureau of Alcohol, Tobacco, and Firearms, testified that they interrogated Brown the day after his arrest. The agents reduced Brown's admissions to a written statement, which he reviewed and then initialed with approval. The agents testified that Brown admitted he sold cocaine for a man he identified as Chop Chop. Brown admitted that he reaped between $4,000 and $5,000 per day selling cocaine, and that Chop Chop allowed him to retain $20 for every five rocks he sold. Brown further admitted that at this rate of compensation, he made approximately $500 per day in personal income by selling cocaine.

Brown admitted that he purchased the revolver, discovered by Detective White, a few days before he was arrested. He further admitted that he bought the gun to protect himself "from being ripped off from his money," as he lived in hotels and routinely carried $4,000 and $5,000 in cash per day.

On August 10, 1989, the grand jury named Brown in a two-count indictment that charged him with possession of cocaine with the intent to distribute and carrying a firearm during a drug trafficking crime. On September 6, 1989, the grand jury returned a superseding indictment that added the statutory language of charging Brown with carrying a firearm "during and *in relation to* a drug trafficking crime" (emphasis added). Brown was tried before a jury on October 4 and 5, 1989. The only contested issue of fact was whether he carried his pistol "in relation to" the underlying drug trafficking offense.

The district court instructed the jury that the offense of possessing cocaine with the intent to distribute was a crime involving specific intent. It instructed the jury that specific intent "means more than the gen-

eral intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids."

The district court instructed the jury as to the elements of 18 U.S.C. § 924(c)(1) thusly:

First, that on or about the date alleged in the indictment the defendant carried a firearm.

Second, that the defendant had knowledge that he was carrying a firearm.

Third, that the defendant carried a firearm during and in relation to a drug trafficking crime; and

Fourth, that the defendant did so during the commission of a drug trafficking crime for which he may be prosecuted in a Court of the United States.

The district court then instructed the jury:

Should you find that the government has proved beyond a reasonable doubt that the defendant carried a firearm during the drug trafficking crime alleged in the first count of the indictment, you must then resolve the question of whether the government has also proved beyond a reasonable doubt that the firearm was carried in relation to that offense.

In order for the phrase "in relation to" to be satisfied, it must be proved that there existed a relationship between the firearm in question and the drug trafficking crime charged in the first count of the indictment.

Proof of the mere presence of the firearm is not sufficient in itself to constitute proof that the firearm was carried in relation to the drug trafficking crime charged in the first count of the indictment.

A firearm is used in relation to an offense if the firearm facilitates the commission of the offense or has a role in the offense, but not if the firearm plays no role. For example, if a firearm is carried in a pocket during the course of a pugilistic barroom fight and is never displayed or referred to, then that firearm was not carried in relation to the fight.

The "in relation to" element will be satisfied if you find from the circum-stances or otherwise that the defendant intended to use the gun if a contingency arose or to make his escape.

Brown did not object to these instructions. The jury later received a copy of them to ponder during its deliberations. After deliberating for nearly a day, the jury sent the following question to the district court:

On page 12 [of the instructions], the last paragraph, "*specific* intent must be proved beyond a reasonable doubt ..."

Question: Must the government also prove *specific* intent to use the gun if a contingency arose, or just prove "intent to use the gun if a contingency arose...."

The district court discussed this question with defense counsel, the Assistant United States Attorney who prosecuted the trial, and another Assistant United States Attorney who happened to be in the courtroom. The district court then concluded:

I don't think carrying a weapon during and in relation to a drug offense is a specific intent crime. That's the problem I'm having even with the Government's position. I think the Congress would be absolutely amazed if we told them that they created a specific intent crime when they made the statute that gives rise to this offense. They wanted to stop drug dealers from carrying guns and having them available during drug offenses.

The defense counsel objected:

I respectfully disagree. They wanted to stop drug dealers from carrying guns, having them available in relation to drug offenses, not during the—not simply during, and that's the essence of what the jury is struggling with here it seems to me.

The district court then recalled the jury and gave it supplemental instructions, which provided in part:

Now, with respect to the second count of the indictment, please bear in mind that the government must prove beyond a reasonable doubt each of the elements of the crime of carrying a firearm and dur-

ing and in relation to a drug trafficking trafficking offense.

Those elements are spelled out at the bottom of page 13 and the top of page 14 [of the jury instructions]. The question that you have submitted to me suggests that you are focusing on the part of the third element which reads: "That the defendant carried a firearm during and in relation to a drug trafficking crime."

That element should be proved beyond a reasonable doubt. That element breaks down to maybe subparts. "During" is one subpart. "In relation to a drug trafficking crime" is the second part. Each of those parts must be proved by proof beyond a reasonable doubt before you are justified in finding that the element has been established.

Now, with respect to your specific question, the question really asks whether or not—whether the word "specific" should be used to modify the word "intended," next to last line on page 15....

It doesn't mean that that's the only matter you can focus on. But if you do focus on that as this question implies, the answers is does the word—should the word "specific" be between the word "defendant" and "intended." The answer is no. You may return to the jury room and resume your deliberations.

After further deliberations, the jury returned a verdict finding Brown guilty on both counts. On December 14, 1989, the district court sentenced Brown to thirty months of imprisonment on the possession count and, as required by section 924(c)(1), sixty months of imprisonment on the firearms count, with the terms to be served consecutively.

The principal issue presented in this appeal is whether section 924(c)(1) is a crime of specific intent.

## II.

A district court engages in statutory construction as a matter of law, and we review its conclusions *de novo*. *See United States v. Montoya*, 827 F.2d 143, 146 (7th Cir. 1987); *United States v. Horowitz*, 756 F.2d 1400, 1403 (9th Cir.), *cert. denied*, 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985). "Where ... resolution of a question of federal law turns on a statute and the intention of Congress, [the federal courts] look first to the statutory language and then to the legislative history if the statutory language is unclear." *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984).

"When a jury seeks clarification of particular issues," the district court has a duty to give supplemental instructions that "clear away its difficulties 'with concrete accuracy.'" *United States v. Nunez*, 889 F.2d 1564, 1568 (6th Cir.1989) (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)). Failure to give sufficient supplemental instructions may be an abuse of discretion that amounts to prejudicial error. *See Nunez*, 889 F.2d at 1569.

## III.

### A.

As originally written in the Gun Control Act of 1968, section 924(c) made it an offense to "carr[y] a firearm *unlawfully during* the commission of any felony." *See Simpson v. United States*, 435 U.S. 6, 8 n. 2, 98 S.Ct. 909, 910 n. 2, 55 L.Ed.2d 70 (1978) (emphasis added). Congress rewrote section 924(c) in the Comprehensive Crime Control Act of 1984, in part by deleting the requirement that the firearm be carried "unlawfully," and inserting the phrase "and in relation to" immediately after the word "during," so that the statute now provides:

(c)(1) Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

18 U.S.C. § 924(c)(1) (for a full discussion of the legislative history, *see Simpson*, 435 U.S. at 13–14, 98 S.Ct. at 913–14; *United States v. Wilson*, 884 F.2d 174, 176–77 (5th Cir.1989); *United States v. Stewart*, 779 F.2d 538, 539 (9th Cir.1985), *cert. denied*,

484 U.S. 867 (1987); S.Rep. No. 225, 98th Cong., 2d Sess. 312–14, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3490–92 (hereinafter referred to as "Senate Report")).

The history of the 1984 amendments to section 924(c)(1) reveals that Congress was concerned that after it broadened the scope of the statute by including "crimes of violence" and cases where the firearms were carried lawfully, the statute could be applied to people who inadvertently possessed a firearm when they engaged in completely unrelated criminal conduct. Senate Report at 314 n. 10. The Senate Judiciary Committee's report indicates that Congress added the phrase "in relation to" to keep the statute focused on those persons whose firearms played a role in their criminal conduct. *Id.*

We have held that the terms "used" and "carries" in section 924(c)(1) should be construed "broadly." *United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). Similarly, the Seventh Circuit has held that "Congress did not intend that [section 924(c)(1)] be given a cramped reading." *United States v. Rosado,* 866 F.2d 967, 970 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989).

However broadly it may be construed, section 924(c)(1) will not support conviction for mere possession of a firearm during the course of criminal conduct. *See United States v. Lyman,* 892 F.2d 751, 753 (8th Cir.1989); *United States v. Theodoropoulos,* 866 F.2d 587, 597 (3d Cir.1989); *Stewart,* 779 F.2d at 540. Rather, "under the current version of § 924(c), the government is shouldered with the burden of establishing some relationship between the firearm [the defendant] possessed and the predicate drug trafficking offense." *Wilson,* 884 F.2d at 177. *See also United States v. Ramos,* 861 F.2d 228, 230 (9th Cir.1988) ("The 'in relation to' language connotes a causal connection between [a defendant's] narcotics felonies and [his] firearm.... [The language was added to prevent prosecution of a person] for inadvertently carry-ing a firearm in an obviously unrelated crime.").

To establish a relationship "between the underlying criminal act and the use or possession of the firearm," *Stewart,* 779 F.2d at 540, the government is not required to show that the defendant displayed or brandished the firearm. Even if a firearm remains hidden throughout a crime, its concealed presence may have been in relation to the crime if it facilitated the crime by emboldening the defendant, giving him the security and confidence to undertake the criminal act. *See United States v. Payero,* 888 F.2d 928, 929 (1st Cir.1989); *Lyman,* 892 F.2d at 753; *United States v. Laing,* 889 F.2d 281, 289 (D.C.Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1306, 108 L.Ed.2d 482 (1990); *Wilson,* 884 F.2d at 177; *United States v. Power,* 881 F.2d 733, 736 (9th Cir.1989); *Rosado,* 866 F.2d at 969–70.

#### B.

Brown first asserts that when Congress amended section 924(c)(1) in 1984, it added the "in relation to element." He further insists this new element requires proof that the defendant carried the gun with the specific intent of using it in relation to the underlying drug charge, and therefore, section 924(c)(1) is a specific intent offense. We do not agree.

When Justice Kennedy was on the Ninth Circuit, that court was faced with the claim that the phrase "in relation to" was an additional and substantive element of the offense. After reviewing the legislative history of the statute, Justice Kennedy concluded that the 1984 amendments did not add a new element, but were

> intended *to make clear a condition already implicit in the statute ...* to allay explicitly the concern that a person could be prosecuted under section 924(c) for committing an entirely unrelated crime while in possession of a firearm.

*Stewart,* 779 F.2d at 539 (emphasis added).

The "condition already implicit" in the statute was that there be a relationship between the weapon and the predicate crime. This condition existed because the

statute originally applied to a limited class of persons—those persons who carried firearms unlawfully while they engaged in felonies. *Id.* at 539–40. Justice Kennedy concluded that when Congress deleted the limitation that the firearm be carried unlawfully, it added the phrase "in relation to" in order to limit the element of "during".

In reaching this conclusion, Justice Kennedy also pointed out that the Senate Report expressly noted significant changes that resulted from the 1984 amendments, such as the expansion of the statute's reach to "crimes of violence." *Id.* at 540. Yet the report made no mention of the addition of any elements or requiring a showing of specific intent, which would have been significant changes worth noting in a committee report.

■ We find Justice Kennedy's analysis to be thoughtful and on point, and we hold that the addition of the phrase "in relation to" did not add a substantive element to the offense set forth in section 924(c)(1). We also hold that section 924(c)(1) is not a specific intent offense, as our review of the legislative history failed to turn up any evidence that supports Brown's assertion that the 1984 amendments elevated the offense from one of general to specific intent. In the absence of such evidence, we adhere to the general rule of construction of criminal statutes that provides that where a statute does not specify a heightened mental element such as specific intent, general intent is presumed to be the required element. *See Wilson,* 884 F.2d at 178–79; *United States v. Nelson,* 733 F.2d 364, 370–71 (5th Cir.), *cert. denied,* 469 U.S. 937, 105 S.Ct. 341, 83 L.Ed.2d 276 (1984); *United States v. Barber,* 594 F.2d 1242, 1244 (9th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979).

Brown argues that it is circular and self-contradictory to hold that section 924(c)(1) is a general intent crime and at the same time require a showing of a relationship between the firearm and the predicate drug crime. He insists that the only way to establish the existence of that relationship is with reference to the defendant and his intent to use the firearm in the predicate drug offense.

Brown's argument fails to consider Congress' concern that with the removal of the requirement that the firearm be carried unlawfully, the statute could apply to people who lawfully, but inadvertently, possessed a gun while they engaged in unrelated criminal activity. Congress' example was of a person who happened to have a gun in his pocket while he engaged in a fist fight. Senate Report at 314 n. 10. The focus of this example is on the gun itself and whether it played a part in the criminal conduct.

In demanding a showing of "specific intent," Brown asserts that more should be required than a relationship between the gun and the crime; he demands a concrete showing that blends the gun, the crime, and the defendant's specific intentions into the conduct that constituted the predicate offense. The statute, however, is satisfied with a sturdy, subtle spider's web. This is evident in cases such as *United States v. Acosta–Cazares,* 878 F.2d 945 (6th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989), and *United States v. Henry,* 878 F.2d 937 (6th Cir.1989), where we adopted the "fortress" theory of possession of firearms in relation to drug trafficking crimes.

In *Acosta–Cazares,* the defendant lived in one apartment but was arrested in another on cocaine trafficking charges. When the police later searched his apartment, they found three firearms—a pistol under a sink and two others in "readily accessible" places. The defendant was convicted of violating section 924(c)(1) and we affirmed, explaining that weapons are used during and in relation to the possession with intent to distribute cocaine where " 'weapons [are] kept at the ready to protect a drug house, thereby safeguarding and facilitating illegal transactions.' " 878 F.2d at 951–52 (quoting *United States v. Matra,* 841 F.2d 837, 842 (8th Cir.1988)).

In *Henry,* the defendant was arrested outside his home while brandishing a pistol. Inside his unoccupied home, police found another pistol and a rifle. Police also

found marijuana growing outside his house and quantities of marijuana and cash inside his house. We concluded that the defendant could be prosecuted under the fortress theory for the possession of all three weapons. We explained that where "it reasonably appears that the firearms found on the premises controlled or owned by the defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." 878 F.2d at 944.

■ While the fortress theory is not applicable to this case, it demonstrates by analogy that when we evaluate whether a firearm was carried in relation to an offense, we do not focus solely on the defendant's intentions as he engaged in the precise conduct that comprised the predicate offense. Rather, we examine the totality of the circumstances surrounding the commission of the crime: the emboldened sallying forth, the execution of the transaction, the escape, and the likely response to contingencies that might have arisen during the commission of the crime. A conviction under section 924(c)(1) will withstand appellate review

> if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor. The defendant's sole purpose in the carrying of the weapon need not have been facilitation of the drug trafficking crime.

*Payero,* 888 F.2d at 929; *see also Laing,* 889 F.2d at 289 (testimony that the defendant carried a handgun during transactions established "a sufficient link" between the defendant, "the handgun, and the drug" to support a conviction under section 924(c)(1)); *Wilson,* 884 F.2d at 177 (relationship sufficient to support conviction pursuant to section 924(c)(1) proved where evidence showed that defendant was carrying a pistol when entering his car, where a quantity of methamphetamine was stored, and that he reached for the pistol when police approached); *Rosado,* 866 F.2d at 970 (sufficient relationship proved where evidence showed that defendant had a pistol in his car, which he parked near a van in which cocaine sale occurred); *Ramos,* 861 F.2d at 230 (sufficient relationship proved where evidence showed that defendant had a pistol beneath the seat of his car while transporting cocaine in route to a sale).

### C.

■ Brown raises a number of issues regarding the district court's supplemental jury instructions, most of which are rendered moot by our holding that section 924(c)(1) is not a specific intent crime. Brown also asserts that the district court's supplemental jury instructions relieved the government of the burden of proving its case beyond a reasonable doubt. This assertion is groundless, as a review of the supplemental jury instructions shows that the district court repeatedly and correctly instructed the jury on the government's burden of proving the element of "during and in relation to" beyond a reasonable doubt. We hold that the district court's supplemental jury instructions answered the jury's question with a specific, concrete, and correct statement of the law.

In addition, we note that many of Brown's attacks on the jury instructions, both the full instructions and the supplemental, seem insincere in light of his failure to object to the full instructions. These instructions stated that the third element of section 924(c)(1) was the single element of "during and in relation to." Brown did not object to this phrasing, nor did he object when the district court instructed the jury on the government's extra burden of proving specific intent in the offense of possession of cocaine with intent to distribute, but gave no such instruction on the firearms charge, thereby indicating that section 924(c)(1) incorporated what the district court instructed the jury was "general intent." Brown also did not object to the failure of the district court to include the word "specifically" between the words "defendant" and "intended" in the instruction in question. Nonetheless, whether we review Brown's arguments for plain error

or abuse of discretion, we find them to be wholly without merit.

### IV.

In conclusion, we hold that the offense set forth in section 924(c)(1) is not a crime of specific intent. Furthermore, we hold that the phrase "in relation to" modifies the element of "during" and does not, in itself, constitute a substantive element of the offense. We hold that where the evidence demonstrates that the defendant admittedly carried a pistol on his person to protect the cash proceeds from his curbside drug sales, the government has shown a relationship between the firearm and the predicate drug trafficking offense sufficient to support a conviction pursuant to section 924(c)(1). Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.