961 F.2d 1580
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony A. YANCEY, Raymond A. Jackson, Defendants-Appellants.
 Nos. 91-3123, 91-3221.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1992.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Anthony Yancey and Raymond Jackson appeal from their convictions in a drug case. The questions presented involve sufficiency of the evidence and acceptance of responsibility under § 3E1.1 of the United States Sentencing Guidelines. Finding none of the defendants' assignments of error persuasive, we shall affirm the convictions.
 
 
 2
 * While serving time at the Toledo House of Correction, defendant Raymond Jackson received from a confidential police informant the pager number of a purported drug buyer. In reality, the number given Jackson was that of Doug Allen, and undercover police officer with the Toledo Police Department.
 
 
 3
 On October 30, 1989, after his release from the House of Correction, Jackson called Allen and asked that he and the confidential informant meet him at a bowling alley. Allen agreed. During this meeting, at which defendant Yancey was also in attendance, Allen agreed to purchase half an ounce of cocaine from Jackson and Yancey for $450 to $500. No transfer occurred at this time, but the parties later agreed to meet the next day to consummate the deal.
 
 
 4
 Allen and the informant drove to a parking lot the next day, picked up Jackson, and traveled to Yancey's apartment. There was some discussion along the way about a price increase. When the men arrived at the apartment, there was a renegotiation of the previously agreed price range. Yancey did most of the negotiating. The parties eventually agreed upon a price of $700. Allen then tendered this sum and was given the cocaine by Jackson.
 
 
 5
 After Allen, the informant, and Jackson had left the apartment, Jackson told Allen that Yancey would be "fronted" more drugs as a result of the sale. This, he said, would enable Yancey to give Allen a better price in the future.
 
 
 6
 On November 14, 1990, Allen called Yancey to inquire if he had any more cocaine for sale. Yancey told him that if he came over to the apartment, "we could do the deal." Allen and the informant went to Yancey's apartment and bought some crack cocaine for $750. Jackson was not present.
 
 
 7
 On November 21, 1990, Yancey paged Allen to tell him that he had half an ounce of cocaine ready for pickup. Allen asked Yancey if he would be available that evening. Yancey replied that he would not, but indicated that he would send Jackson in his place. It was agreed that the deal would be done outside a certain post office. Allen and the informant drove to a parking lot and met Jackson, who was standing at a street corner near the post office. Jackson entered the car and gave Allen a plastic baggie containing a powdery substance. Allen inspected it and thought there was something wrong with it; the bag was significantly smaller in size than the others, and it smelled like baby powder. Allen refused to buy the purported drugs, whereupon Jackson left the car and ran down the street.
 
 
 8
 On November 27, 1990, Yancey contacted Allen and told him that he had half an ounce of cocaine for sale. Yancey asked Allen to come to his apartment and pick him up so they could go get the drugs. Allen did so, accompanied by the informant, and saw Jackson inside the apartment. According to Allen, Jackson was too ashamed to look at him. Allen, Yancey, and the informant left the apartment and drove to a house that Yancey entered alone. He returned with half an ounce of cocaine. After inspecting the merchandise, Allen gave Yancey $725. Yancey took the money back inside the house, reemerging a short time later.
 
 
 9
 The group then headed back to Yancey's residence. En route, Yancey told Allen and the informant that he had been stopped by the police while he had a gun in his pocket. Allen asked Yancey if he had his 9mm. on him now. He replied that he did not, but reached into his coat and pulled out a .25 caliber semi-automatic Raven pistol. Allen asked Yancey if he could see the weapon, and noted that it was loaded with two rounds of ammunition. Allen offered to purchase the gun. Yancey initially refused, but sold it to Allen a couple of days later for $100.
 
 
 10
 On February 20, 1990, a federal grand jury returned a five-count indictment against Yancey and Jackson. Count I charged them with conspiracy to possess and distribute cocaine and crack cocaine in violation of 21 U.S.C. § 841(a). Count II charged them with possession of cocaine with intent to distribute it for the October 31st sale in violation of 21 U.S.C. § 841. Count III charged them with possession of crack cocaine with intent to distribute it for the November 14th sale. Count IV charged them with possession of cocaine with intent to distribute it for the November 27th sale. Count V charged them with use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).
 
 
 11
 The jury found Yancey guilty on all five counts. He received a sentence of imprisonment for 63 months on Counts I-IV and a consecutive term of 60 months on Count V. Jackson was found guilty on Counts I-III, but was acquitted on Counts IV and V. The district court denied Jackson a two-level reduction for acceptance of responsibility and sentenced him to imprisonment for 120 months. Yancey and Jackson then filed timely notices of appeal.
 
 II
 
 12
 Yancey contends that the evidence was insufficient to support his conviction for use of a firearm in relation to a drug trafficking crime, and Jackson challenges the sufficiency of the evidence against him with respect to the November 14th sale of crack cocaine.
 
 
 13
 When reviewing the sufficiency of evidence, this court does not sit as a trier of fact. We must simply determine "whether after viewing the evidence in the light most favorable to the prosecution any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1017 (1986), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 14
 Under 18 U.S.C. § 924(c), "whoever, during and in relation to ... [a] drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for [the] trafficking crime, be sentenced to imprisonment for five years...." To sustain a conviction, the government must prove a relationship between the firearm and the drug trafficking offense. United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990). It is not necessarily dispositive that the defendant never displayed or brandished the weapon, however, because a hidden firearm may facilitate a drug crime by "emboldening the defendant, giving him the security and confidence to undertake the criminal act." Id.
 
 
 15
 We think that the jury could reasonably have concluded that Yancey used his gun to facilitate the drug transaction here. The evidence showed that Yancey was returning from a drug deal when Allen discovered that he was in possession of a gun. Yancey had placed the gun inside of his coat, which made the weapon readily accessible. He had ventured into what was presumably a crack house, with the gun, while carrying over $700 in cash, and he was carrying the gun when he left the crack house with hundreds of dollars worth of drugs. The jury could reasonably have concluded that possession of the weapon "emboldened" him during his commission of the crime.
 
 
 16
 Jackson argues that there was insufficient evidence to support his conviction for the November 14th sale of crack cocaine to Allen. He contends that there was no evidence to link him to this sale because he was not present at the transaction and because he had not participated in any of the drug deals other than the first one. As a co-conspirator, however, Jackson was liable for "all 'ramifications of the plan which could [ ] be reasonably foreseen.' " United States v. Tisdale, 952 F.2d 934, 938 (6th Cir.1992), quoting Pinkerton v. United States, 328 U.S. 640, 648 (1946). "The Pinkerton doctrine permits conviction of a coconspirator for the substantive offenses of the other coconspirators committed during and in furtherance of the conspiracy." United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2038 (1991).
 
 
 17
 In the case at bar, Jackson was found guilty of conspiring with Yancey to distribute drugs. It was reasonable for the jury to conclude that Jackson was part of the conspiracy at the time of the November 14th sale--for on November 21st he attempted to make a drug sale to Allen at the request of Yancey. It was reasonably foreseeable to Jackson that Yancey would distribute more drugs to Allen, for Jackson told Allen after the transaction on October 31st that more drugs would be fronted to Yancey as a result of the sale. Two weeks after this conversation, Yancey sold crack cocaine to Allen.
 
 III
 
 18
 Finally, Jackson argues that he should have received a two-level reduction in his offense level for acceptance of responsibility. Again we are not convinced.
 
 
 19
 Under U.S.S.G. § 3E1.1, the defendant is entitled to a two-level reduction if he demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct. This reduction is not intended to apply to the defendant "who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Application Note 2 to § 3E1.1.
 
 
 20
 "Whether or not a defendant has accepted responsibility for his crime is a factual question. The district court's determination of that question ... enjoys the protection of the 'clearly erroneous' standard." United States v. Snyder, 913 F.2d 300, 305 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 709 (1991), quoting United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1984). The defendant has the burden of establishing by a preponderance of the evidence facts that would support his claim for the reduction. United States v. Rodriguez, 896 F.2d 1031, 1033 (6th Cir.1990).
 
 
 21
 Here the district court held that Jackson did not carry his burden of proof. That holding was not clearly erroneous. Jackson pleaded innocent and did not admit to any of the essential factual elements of his guilt before or during his trial. He waited until the time of sentencing before he admitted his guilt, and then did so only as to the October 31st sale. He has never admitted any responsibility for the November 14th sale.
 
 
 22
 AFFIRMED.