991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Douglas C. HALL, Defendant-Appellant.
 Nos. 92-5486, 92-5527.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1993.
 
 Before KEITH and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant-appellant, Douglas Clayton Hall ("Hall"), appeals his jury conviction and sentence for possession of a firearm during and in relation to a drug offense, in violation of 18 U.S.C. § 924(c)(1). The district court sentenced Hall to sixty (60) months imprisonment, followed by three years of supervised release. For the reasons stated below, we AFFIRM his conviction and sentence.
 
 I.
 
 2
 On May 24, 1991, members of the City of Knoxville (Tennessee) Police Department executed a search warrant for controlled substances at Hall's home. The search warrant did not allege that any firearms would be on the premises. Upon arrival at Hall's residence, the officers discovered two men and an infant child sitting on the front porch, but no one else was present in the home. The front entrance to the home was locked, secured by a security door and several deadbolt locks.[1] After failing in their attempt to enter through the back door, the officers entered Hall's residence through a side window that was open a few inches.[2] Testimony later indicated that the officers entered the home through a child's bedroom window.
 
 
 3
 Upon entering the residence, the officers conducted a protective sweep of the house but did not execute a thorough search of the home. During this period, an officer called for a K-9 Unit or "drug dogs." The officers then opened the front door and allowed other officers to enter to conduct the search. Hall arrived home at about the same time as the drug dogs.
 
 
 4
 With the assistance of the K-9 Unit, the officers found two packages of cocaine hydrochloride in baggies underneath the bed in the master bedroom. The officers found two additional packages of cocaine in a separate case with a set of electronic scales. They also discovered a third smaller package of cocaine in a small pouch on a piece of furniture in the master bedroom. A total of 35.8 grams of cocaine was found on the premises. In addition, the officers found other drug paraphernalia, including an empty bottle of inosital, a cutting agent for cocaine, and a sifter for the cocaine.
 
 
 5
 Having found this evidence of drug trafficking, the officers placed Hall under arrest and apprised Hall of his constitutional rights. Officer Jim Jones then asked Hall if there were any large amounts of money, firearms or jewelry in the residence. Hall forthrightly responded and took the officers into the master bedroom where the officers located a RG-10 .22 caliber revolver that was incapable of being fired. The officers were then led to a back hallway closet near an impassable backdoor. By standing on a chair, Officer Hayes Waldrop retrieved a briefcase from the top shelf of the closet that contained a loaded Smith and Wesson 9 mm pistol and $3,000. Shortly thereafter, acting upon additional instructions from Hall, Officer May returned to the same closet, stood on a chair and found the Bersa .380 caliber pistol.
 
 
 6
 Subsequently, Glenn Anderson, an agent with the Bureau of Alcohol, Tobacco, and Firearms, secured the following signed statement from Hall:
 
 
 7
 My name is Douglas Clayton Hall. I live at 2515 Brown Avenue, Knoxville, Tennessee, 37917. I have lived at this residence for approximately six to seven years. I am the only person who lives at this residence. The Smith & Wesson Model 6904, Nine-Millimeter Pistol, Serial Number AIP-8881, belongs to me. I bought the gun for approximately $410 at a place on Clinton Highway about two years ago. I kept the gun at my house because I had had several people try to break into my house.
 
 
 8
 I loaded the gun to protect myself. The Bersa model 97 caliber .380, Serial Number O46683, which was found in my closet at my house belongs to me. My uncle gave it to me before he died. I keep this gun loaded because I need to protect me and my house.
 
 
 9
 The RG-10 revolver, serial number 826287, belongs to me. It was the first gun I ever bought. All the cocaine which was found at my house belongs to me. I generally sell the cocaine in quarter gram amounts and get about 15 to 20 dollars a quale.[3] All the money found at my house belongs to me.
 
 
 10
 I give this statement freely and voluntarily after being advised of my constitutional rights. (footnote added).
 
 
 11
 On August 20, 1992, the Grand Jury for the Eastern District of Tennessee returned an indictment charging Hall with knowingly and intentionally possessing the three firearms "during and in relation to a drug trafficking crime, that is, possession with intent to distribute cocaine hydrochloride" on May 24, 1991, in violation of 18 U.S.C. § 924(c)(1). Following a hearing on defense counsel's motion to suppress oral statements made by Hall during the search, the district court overruled defense objections to United States Magistrate's Report and Recommendation on the issue and denied defense counsel's motion to suppress. Note, however, that defense counsel did not argue that the firearms, which were not included in the search warrant, should have been suppressed.
 
 
 12
 On January 21, 1992, a two-day jury trial commenced. The jury found Hall guilty of the charged offense. On January 29, 1992, defense counsel moved for a new trial and filed a motion for judgment of acquittal, asserting, among other grounds, that there was insufficient proof to convict Hall of the crime charged. On March 18, 1992, in a Memorandum Opinion and Order, the district court denied both motions. On March 25, 1992, the district court sentenced Hall to sixty (60) months imprisonment. This timely appeal followed.
 
 II.
 
 13
 On appeal, Hall has raised two challenges. Hall first contends that he was denied effective assistance of counsel. He then argues that the evidence presented at trial does not support the guilty verdict rendered by the jury. Each contention is addressed seriatim below.
 
 A.
 
 14
 Hall first argues that he was deprived of his right to effective assistance of counsel because his counsel failed to argue that the weapons that were seized during the search should have been suppressed. He contends that the weapons were illegally seized because they were not named in the search warrant. Accordingly, Hall asserts that his counsel's failure to move for the suppression of the three firearms constituted deficient performance and prejudiced his defense because his conviction and sentence rested upon the introduction of these firearms into the case.
 
 
 15
 Hall, however, raises this issue for the first time in this court on direct appeal. In United States v. Smith, 981 F.2d 887 (6th Cir.1992), this Court stated:
 
 
 16
 As a general rule, a defendant may not raise a claim of ineffective assistance of counsel for the first time on direct appeal, since such a situation generally precludes an opportunity to develop and include evidence bearing on the merits of the allegations of ineffective assistance in the record."
 
 
 17
 Id. at 894. The usual course is to permit the defendant to raise his ineffective assistance of counsel claim in a post-conviction proceeding pursuant to 28 U.S.C. § 2255. See United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990). The Wunder Court further observed: "[w]hen, however, the record is adequate to assess the merits of the defendant's allegations, some courts will consider them." Id. In the case at bar, we believe that the record is adequate to assess the merits of Hall's ineffective assistance of counsel claim.
 
 
 18
 In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court determined that a reversal of conviction for ineffective assistance of counsel requires both a showing that trial counsel's performance was deficient and that this deficient performance prejudiced the defendant. Id. at 687. The Court elaborated further on each prong, stating that a deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. The prejudice requirement is satisfied if those "errors were so serious as to deprive the defendant of a fair trial, a trial whose result was reliable." Id.
 
 
 19
 In this case, defense counsel's failure to argue for the suppression of the firearms was a judgment call. Defense counsel is vested with the task of making crucial decisions throughout criminal proceedings. While it may appear, in hindsight, that defense counsel should have moved for suppression of the firearms, the decision to move solely for suppression of Hall's statements did not fall below the objectively reasonable standard of representation mandated by the Sixth Amendment.
 
 
 20
 Moreover, defense counsel's failure to move for suppression of the firearms was not inherently prejudicial to the defense. While the search warrant did not contain any reference to the presence of firearms, it appears that the officers had probable cause to seize them. See generally, Texas v. Brown, 460 U.S. 730 (1983). Probable cause "requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be ... useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." Id. at 742 (citations omitted).
 
 
 21
 This Court recognizes that it is not uncommon for firearms to be used to facilitate narcotics transactions. See United States v. Marino, 658 F.2d 1120, 1123 (6th Cir.1981). Irrespective of the search warrant's silence on the presence of firearms, an officer could reasonably believe that the weapons were indeed used to facilitate the distribution of the already seized controlled substances. Thus, we cannot say that the introduction of the firearms as evidence in this case prejudiced Hall by depriving him of a fair trial. Accordingly, defense counsel's failure to move for the suppression of the firearms is not reversible error.
 
 B.
 
 22
 Hall next contends that the evidence presented at trial is not sufficient to sustain his conviction and sentence. Specifically, he argues that the evidence "does not support a verdict of guilty beyond a reasonable doubt of knowingly carrying a firearm during and in relation to a drug trafficking crime." Hall argues that the fact that he was involved in cocaine distribution does not mean that the firearms discovered were used to further that purpose. Hall claims that the firearms at his residence were present solely to protect his person and his home. We review a challenge to the sufficiency of the evidence to sustain conviction by inquiring "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 23
 18 U.S.C. § 924(c)(1) provides in pertinent part:
 
 
 24
 Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 25
 The government must establish "some relationship between the firearm the Defendant possessed and the predicate drug trafficking offense." United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990). This court has also stated that the terms " 'uses' and 'carries' should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." United States v. Acosta-Cazares, 878 F.2d 945, 952 (6th Cir.) cert. denied, 493 U.S. 899 (1989). The Court has also recognized a "fortress theory" which states that where "it reasonably appears that firearms found on the premises controlled or owned by the defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." United States v. Henry, 878 F.2d 937 (6th Cir.1989). Moreover, this Court stated in Brown:
 
 
 26
 [W]e examine the totality of the circumstances surrounding the commission of a crime; .... A conviction under section 924(c)(1) will withstand appellate review
 
 
 27
 if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor. The defendant's sole purpose in the carrying of the weapon need not have been facilitation of the drug trafficking crime.
 
 
 28
 Brown, 915 F.2d at 226 (quoting United States v. Payero, 888 F.2d 928, 929 (1st Cir.1989).
 
 
 29
 Testimony at trial indicated that, upon being questioned about the presence of firearms in the home, Hall informed the officers that there was one firearm in the master bedroom and two firearms on the top shelf in a back closet. The RG-10 revolver found in the master bedroom was inoperable. The officers who retrieved the two firearms from the back closet stood on chairs to retrieve the weapons. The officers, however, indicated that they only stood on chairs so that they could see the top shelf clearly and to avoid unnecessary injury. They stated that they could have reached the firearms without standing on anything.
 
 
 30
 By contrast, defense witnesses testified that they did not think Hall could reach the weapons without standing on something, intimating that the weapons could not have been used in accordance with the fortress theory. Mrs. Hall testified specifically that she thought that her husband had to stand on something to reach the guns. She testified that she also had access to the guns in the back closet, but she had to stand on something to get to them. Additionally, Mrs. Hall testified that the money found in the briefcase was to be used to pay a housing contractor and was not related to the drug distribution practices.
 
 
 31
 We think that the evidence presented was sufficient to sustain a guilty conviction to the charged crime. Although the proof was disputed, a reasonable juror could have found that, viewing the totality of the circumstances, Hall possessed the weapons, in part, to protect his drug trafficking activities. Accordingly, this assignment of error lacks merit.
 
 III.
 
 32
 For the foregoing reasons, we AFFIRM the conviction and sentence imposed by the Honorable Leon Jordan, United District Judge for the Eastern District of Tennessee.
 
 
 
 [1]
 Officer Allen May testified, on cross examination, that the home was not abnormally secured
 
 
 [2]
 The officers later discovered that no access to the back door existed from inside the home either
 
 
 [3]
 A "quale" is defined as a quarter gram quantity of the controlled substance