996 F.2d 1218
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Barry G. RATTIGAN, Defendant-Appellant.
 No. 92-3597.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1993.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and PECK, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 A jury convicted defendant Barry G. Rattigan of four counts of narcotics and firearms violations, including distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii), and possession of a firearm in relation to a drug offense, in violation of 18 U.S.C. §§ 2 and 924(c). This appeal presents three issues:
 
 
 2
 1) Whether Rattigan was denied his Sixth Amendment right to be tried by a jury selected from a fair cross-section of the community;
 
 
 3
 2) Whether the district court erred when it prohibited Rattigan's counsel from cross-examining a government witness about his prior misdemeanor convictions; and
 
 
 4
 3) Whether sufficient evidence supports Rattigan's firearms conviction under 18 U.S.C. § 924(c).
 
 
 5
 Finding no error, we shall affirm.
 
 I.
 
 6
 In May 1991, Special Agent Frank D'Alesio, from the Bureau of Alcohol, Tobacco, and Firearms (ATF), began investigating several individuals for drug trafficking in Columbus, Ohio. During the investigation, Agent D'Alesio learned from Richard Ferguson, a confidential informant and convicted felon, that several individuals were trafficking crack cocaine out of an 18th Street apartment in Columbus. Consequently, Agent D'Alesio arranged for two controlled purchases of cocaine from the 18th Street apartment. On June 17, 1991, while Agent D'Alesio waited outside, Ferguson used marked money to make a controlled purchase of crack cocaine at the 18th Street apartment. After Ferguson made the purchase, he told Agent D'Alesio that Rattigan and someone named "Tony," who was armed with a handgun, sold him crack cocaine in the apartment. According to his trial testimony, Ferguson had purchased drugs from Rattigan and Tony a number of times before the controlled buy on June 17, and during several of these prior drug transactions, Tony carried a handgun. On June 18, Ferguson and another undercover ATF agent, Larry Ford, returned to the apartment to make another controlled drug purchase. In the apartment, Rattigan held a ceramic plate containing pieces of crack cocaine. When Agent Ford paid Rattigan $25, Rattigan told Ford to select a piece of crack from the plate. Tony was present during the transaction.
 
 
 7
 That night, ATF agents executed a search warrant at the apartment. According to the agents, when they entered the apartment, Rattigan and Tony ran from the east bedroom into the west bedroom. Rattigan was carrying a ceramic plate. Tony escaped out the window, while Rattigan shoved the plate through another window and was stopped before he could escape. During a search incident to Rattigan's arrest, agents discovered money in his pockets, including marked bills from the two controlled drug buys. The agents also discovered what later proved to be crack on the window sill and on the ground below the window where Rattigan had thrown the plate. After searching the apartment, the agents found a Haskell .45 caliber semiautomatic pistol on the floor of the east bedroom. The gun was loaded with eight rounds, including one round in the chamber. Also in the east bedroom, agents discovered a bundle of money on the bed that included marked bills from the two controlled purchases made by Ferguson and Ford. In the west bedroom, where Rattigan was arrested, agents discovered ammunition for various caliber weapons.
 
 
 8
 On June 11, 1990, a federal grand jury returned an indictment charging Rattigan with federal narcotics violations. Counts One, Two, and Three charged Rattigan with distributing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2. Count 4 charged Rattigan with possessing a firearm during a drug-trafficking offense, in violation of 18 U.S.C. §§ 2 and 924(c). Rattigan pled not guilty. Subsequently, a jury convicted Rattigan on all counts of the indictment and he was sentenced to a term of imprisonment totally 147 months.
 
 II.
 A.
 
 9
 In his first assignment of error, Rattigan, a black male, claims that he was denied his Sixth Amendment right to be tried by a jury selected from a fair cross-section of the community. When the trial court summoned the jury panel for voir dire, Rattigan's counsel noted that there was only one black member on the 40-member panel. He argued that the panel did not represent a fair cross-section of the community. In response, the government provided the court with a memorandum from the chief deputy clerk to all judges of the Southern District of Ohio. The memorandum describes the district's jury selection process, which involves selecting potential jurors from voter registration cards for the counties in the Southern District of Ohio. The memorandum compares the percentage of minorities in the pool of jurors with the percentage of minorities in the district's total population. According to the memorandum, the "United States District Court for the Southern District of Ohio compares well in race percentages to the census and wheel sample reports,"[1] and the district court's jury selection process complies with the requirements of the United States Constitution. The district court accepted the memorandum as part of the record. After finding that Rattigan failed to show that the district's selection process systematically excludes black individuals, the court concluded that there was no violation of the Constitution's fair cross-section requirement.
 
 
 10
 On appeal, Rattigan argues that because the panel included only one black member out of 40 individuals, the government assumed the burden of establishing that the jury selection process was constitutional. The government continues to maintain that Rattigan failed to establish a prima facie case that the jury was not selected from a fair cross-section of the community.
 
 
 11
 Whether Rattigan was denied his Sixth Amendment right to be tried by a jury selected from a fair cross-section of the community is a mixed question of fact and law. This court reviews mixed questions de novo. See Pullman-Standard v. Swint, 456 U.S. 273, 287-88 (1982).
 
 
 12
 The Sixth Amendment guarantees a defendant the right to be tried by a jury selected from a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 527 (1975). The Jury Service and Selection Act of 1968 codifies the rights of litigants in federal courts with respect to jurors. 28 U.S.C. §§ 1861 et seq. The Act establishes that
 
 
 13
 all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.
 
 
 14
 28 U.S.C. § 1861. In Duren v. Missouri, 439 U.S. 357 (1979), the Supreme Court held that
 
 
 15
 to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.
 
 
 16
 Id. at 364. See also Morris v. Doan, 829 F.2d 39 (Text in WESTLAW at 3) (6th Cir.1987), cert. denied, 485 U.S. 1036 (1988).
 
 
 17
 Before this court, Rattigan makes no attempt to establish the elements of his prima facie case; instead, he argues that because there was only one black member out of 40-member panel, the burden shifted to the government to show that the district court's procedure for selecting jurors is constitutional. Rattigan argues that the government's burden involves more than showing no systematic intent to exclude; the government must also show "a systematic intent to insure that a representative cross-section of the community is chosen." Rattigan cites no law supporting either argument, and we know of none. Moreover, the Supreme Court made it clear in Duren that under-representation of a particular class does not, by itself, discredit the jury selection process. 439 U.S. 357.
 
 
 18
 While Rattigan could easily establish the first prong of the Duren test, that blacks comprise a "distinctive" group in the community, Rattigan offers no evidence to establish the second prong--that the representation of blacks in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. He offers nothing to rebut the conclusion reached in the district court clerk's memorandum that "the ... [d]istrict court ... of Ohio compares well in race percentages to the census and wheel sample reports." Moreover, even if Rattigan could establish that the percentage of blacks selected for jury duty does not equal the percentage of blacks in the entire community, this does mean that the process systematically excludes blacks from the venire. See Ford v. Seabold, 841 F.2d 677, 685 (6th Cir.), cert. denied, 488 U.S. 928 (1988). To establish a prima facie case, Rattigan must also provide evidence establishing that the selection process systematically excludes blacks, but he fails to offer any proof of systematic exclusion. Consequently, the district court correctly concluded that Rattigan failed to establish a prima facie case that the fair cross-section requirement was violated.
 
 B.
 
 19
 In his second assignment of error, Rattigan argues that the district court erred when it prohibited him from cross-examining a government witness about the witness's prior misdemeanor convictions. The record reveals that the government planned to offer the testimony of Ferguson, the confidential informant, at trial. During trial, the government made a motion in limine to prohibit Rattigan from cross-examining Ferguson about his prior misdemeanor convictions. Ferguson's criminal history included two felony convictions for firearms violations, one forgery conviction, and several misdemeanor convictions in Ohio for criminal trespass, unauthorized use of property, and unauthorized use of a motor vehicle. The government did not object to questions regarding Ferguson's felony firearms and forgery convictions; however, the government claimed that Rule 609(a) of the Federal Rules of Evidence did not allow for cross-examination concerning Ferguson's misdemeanor charges because the crimes did not involve dishonesty or false statement. The district court agreed and granted the motion in limine.
 
 
 20
 According to Rattigan, Ferguson's criminal trespass and unauthorized use of property convictions constitute crimes involving dishonesty or false statement and may be proved for impeachment purposes. The government argues that the standard of review is abuse of discretion, and that the district court did not abuse its discretion when it prohibited the cross-examination. According to the government, even if the district court erred, its error was harmless.
 
 
 21
 Since this issue involves the proper application of Fed.R.Evid. 609(a)(2), our review is de novo. Although some evidentiary decisions are within the broad discretion of the trial judge, the admission of prior convictions under Rule 609(a)(2) is not because, under the rule, the district court has no discretion to exclude evidence of prior convictions that involve crimes of dishonesty or false statement. United States v. Morrow, 977 F.2d 222, 228 (6th Cir.1992) (en banc ); McHenry v. Chadwick, 896 F.2d 184, 189 (6th Cir.1990).
 
 
 22
 Under Rule 609(a)(2), "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment." Fed.R.Evid. 609(a).[3] According to the advisory committee notes, crimes that involve "dishonesty or false statement" include
 
 
 23
 perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretenses, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.
 
 
 24
 Fed.R.Evid. 609 advisory committee's note; see McHenry, 896 F.2d at 188. Surprising as it may be, federal courts, including this court, have been unwilling to conclude that offenses such as petty larceny, shoplifting, or robbery are crimes of "dishonesty or false statement." See McHenry, 896 F.2d at 188; United States v. Scisney, 885 F.2d 325, 326 (6th Cir.1989); see also McCormick's on Evidence § 43 (Edward W. Clearly, et al. eds.) (3d Ed.Supp.1987). Unless the particular conviction rests upon facts that involve "some element of active misrepresentation," the prior misdemeanor conviction should not be admitted to impeach credibility. See McCormick's on Evidence § 43 (Supp.1987).
 
 
 25
 In Ohio, shoplifting involves permanently depriving the owner of property, while unauthorized use of property involves using another's property without the consent of the owner. Ohio Rev.Code Ann. §§ 2913.02, 2913.03, and 2913.04. Because this court has concluded that theft is not necessarily a crime involving dishonesty or false statement, it follows that Ferguson's misdemeanor convictions for criminal trespass and unauthorized use of property also do not constitute crimes of dishonesty under Rule 609, particularly because the facts do not indicate that some element of active misrepresentation was involved. See McHenry, 896 F.2d at 188; Scisney, 885 F.2d at 326. We conclude, therefore, that the district court correctly followed binding federal decisional precedent when it refused to allow Rattigan the opportunity to cross-examine Ferguson on his prior misdemeanors.
 
 C.
 
 26
 In his final assignment of error, Rattigan argues that the evidence was insufficient to support his firearms conviction under 18 U.S.C. § 924(c). Rattigan argues that because no one testified that he physically possessed a gun during any drug transaction, the evidence was insufficient to sustain his conviction under section 924(c), and the district court erred when it denied his motion for judgment of acquittal. The government responds that because section 924(c) was designed to cover firearms that facilitate the execution of the felony in any way, sufficient evidence supports the conviction.
 
 
 27
 "In a criminal case the standard of review for claims of insufficient evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The same standard applies to this court's appellate review of the district court's denial of a motion for judgment of acquittal. United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985).
 
 Section 924(c)(1) provides, in part:
 
 28
 Whoever, during and in relation to any crime of violence or drug trafficking crime ..., uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....
 
 
 29
 18 U.S.C. § 924(c)(1). This court has found that "uses" does not necessarily mean brandishment or display of a weapon, and "carries" does not mean actual possession. United States v. Acosta-Cazares, 878 F.2d 945, 951 (6th Cir.), cert. denied, 493 U.S. 899 (1989). Rather, section 924(c) has been broadly construed to mean " 'possession of a firearm which in any manner facilitates the execution of a felony.' " Id. at 952 (citation omitted). When determining whether a firearm was carried in relation to a drug trafficking offense, we examine the totality of circumstances surrounding the underlying offense. United States v. Blankenship, 954 F.2d 1224, 1229 (6th Cir.), cert. denied, 113 S.Ct. 288 (1992). A conviction under section 924(c)(1) should be upheld by this court
 
 
 30
 "if the possessor of a weapon intended to have it available for possible use during or immediately following the transaction, or if it facilitated the transaction by lending courage to the possessor. The defendant's sole purpose in carrying the weapon need not have been facilitation of the drug trafficking crime."
 
 
 31
 Blankenship, 954 F.2d at 1229 (quoting United States v. Brown, 915 F.2d 219, 226 (6th Cir.1990)).
 
 
 32
 Although no one testified that he saw Rattigan actually possess a weapon, the evidence sufficiently establishes that Rattigan kept a weapon readily accessible to protect or facilitate his drug transactions. Ferguson testified that, on several occasions, Rattigan sold cocaine to Ferguson while Tony was present and armed. Furthermore, a gun and ammunition were discovered in the apartment where Rattigan sold drugs. The loaded semiautomatic was on the floor with a round in the chamber. Viewing the evidence in the light most favorable to the government, a rational jury could find that Rattigan used firearms as a means of safeguarding and facilitating his drug trafficking operations and as a means of protecting his possession of cocaine. A rational jury also could conclude that Tony's presence with the handgun facilitated Rattigan's drug transactions by giving Rattigan "courage" and protection. We conclude that there was sufficient evidence to support Rattigan's conviction for use of a firearm in relation to a drug offense.
 
 III.
 
 33
 For the foregoing reasons, we shall AFFIRM the district court's judgment of conviction.
 
 
 
 [1]
 For example, the memorandum reports that, in 1990, the percentage of non-white jurors on the Columbus qualified "wheel" sample was 7.86%, while the census reported that the percentage of non-white individuals 18 and over in Columbus was 9.8%
 
 
 [3]
 Rule 609. Impeachment by Evidence of Conviction of Crime
 (a) General Rule. For the purpose of attacking the credibility of a witness,
 (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
 (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.
 Fed.R.Evid. 609(a).