# BRUNO ANTHONY LOPATA, JR. *v.* STATE OF MARYLAND

[No. 805, September Term, 1972.]

*Decided July 16, 1973.*

The cause was argued before MORTON, MOYLAN and SCANLAN, JJ.

*Stephen L. Miles* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Barbara Daly, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Appealing his conviction by Judge Paul A. Dorf, sitting without a jury, in the Criminal Court of Baltimore for receiving a stolen automobile, the appellant, Bruno Anthony Lopata, Jr., claims that a garage search yielding the stolen car was unconstitutional. His claim fails for either of two self-sufficient reasons:

(1) The appellant had no standing to contest the search; and

(2) The search, in any event, was made pursuant to a voluntary consent.

### The Threshold Question of Standing

As a salutary limitation upon the operation of the exclusionary rule, the notion of standing precludes one person from asserting vicariously the Fourth Amendment claims of another. It is not enough for a defendant to show that someone's constitutional rights have been violated; he

must show that *his* constitutional rights have been violated. In *Palmer v. State,* 14 Md. App. 159, 286 A. 2d 572, we traced at length the development and present parameters of the law of standing. We there pointed out that the fountainhead of present-day standing to object to searches or seizures is *Jones v. United States,* 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960). Standing to object to the search of a place must be based upon either of two relationships to the situs of the search:

(1) A present possessory interest in the property searched; or

(2) Legitimate presence upon the premises.
The appellant had neither.

At approximately 2:30 p.m. on February 4, 1972, the appellant was safely in the Baltimore City Jail. At that time, Sgt. William C. Hughes, of the Special Investigation Division of the Baltimore City Police Department, went to a garage located in the rear of 1117 Weldon Avenue. The lessee of the garage was Charles Mungert. Mungert, a body and fender auto mechanic, permitted free access to the garage to a number of people. He permitted the appellant and the appellant's brother to keep some automobile parts there. He testified that he was going to help the appellant's brother put a motor in the brother's 1967 Pontiac. He testified that he did not know where the motor was to come from but that one was subsequently delivered "by two boys in a red panel truck." The appellant paid Mungert nothing for the use of the garage.

It is clear that, within the contemplation of *Jones,* the appellant had no "present possessory interest" in the Weldon Avenue garage. The first predicate upon which to base standing was, therefore, unavailable to him. *Jones,* in liberalizing the harsh limitations which had theretofore denied standing to guests, licensees and invitees, in 1960 extended the right to object to a search to all those "legitimately on the premises" at the time of the questioned search. That extension, however, was limited to those "on the premises" at the time. The jailed appellant obviously

was not that. The second predicate upon which to base standing was, thus, also unavailable to him.

The very recent decision of the Supreme Court on the law of standing, *Brown v. United States*, 13 Cr. L. 3023, handed down on April 17, 1973, is on all fours with the case at bar. Brown was convicted of transporting stolen goods in interstate commerce. Brown, as in the case at bar, stored the stolen goods in the premises of someone else. Brown, as in the case at bar, was not present when the search of that premises was executed. In *Brown*, furthermore, the search of the co-conspirator's premises was held to be unconstitutional and a motion to suppress was granted as to him. Notwithstanding that clear unconstitutionality as to one with standing, Brown was held to be beyond the pale of the Fourth Amendment protection. The Supreme Court disposed of Brown's claim as follows:

> "In deciding this case, therefore, it is sufficient to hold that there is no standing to contest a search and seizure where, as here, the defendants: (a) were not on the premises at the time of the contested search and seizure; (b) had no proprietary or possessory interest in the premises..."

The Supreme Court concluded, in *Brown*:

> "[P]etitioners had no standing to contest the defective warrant used to search Knuckles' store; they could not then and cannot now rely on the Fourth Amendment rights of another. 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. *Simmons v. United States*, 390 U. S. 377 (1968); *Jones v. United States*, 362 U. S. 257 (1960).' *Alderman v. United States*, 394 U. S. 165, 174 (1969)."

### Consent to Search

Even though the lack of standing could in and of itself dispose of the appellant's Fourth Amendment claim, we deliberately elect to point out that, in any event, the search

of the garage here was constitutionally valid pursuant to a voluntary consent, because of the appropriateness of the Supreme Court's recent pronouncement in *Schneckloth v. Bustamonte*, 13 Cr. L. 3107, handed down on May 29, 1973. *Schneckloth* dealt for the first time with the quality of consent required to meet Fourth Amendment standards.

From its previous decisions which had touched on the question of consent, *Davis v. United States*, 328 U. S. 582, 593-594, 66 S. Ct. 1256, 90 L. Ed. 1453 (1946); *Zap v. United States*, 328 U. S. 624, 630, 66 S. Ct. 1277, 90 L. Ed. 1477 (1946); *Katz v. United States*, 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967); *Bumper v. North Carolina*, 391 U. S. 543, 548, 88 S. Ct. 1788, 20 L.Ed.2d 797 (1968); and *Vale v. Louisiana*, 399 U. S. 30, 35, 90 S. Ct. 1969, 26 L.Ed.2d 409 (1970), the Supreme Court in *Schneckloth* distilled the principle that to be constitutionally valid, a consent to search must be "voluntary." It then put the issue:

> "The precise question in this case, then, is what must the state prove to demonstrate that a consent was 'voluntarily' given."

The Court then turned, for guidance in answering that question, to the "most extensive judicial exposition of the meaning of 'voluntariness'" which had been developed in "some 30 different cases" between *Brown v. Mississippi*, 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682 (1936), and *Escobedo v. Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964). During those years before *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), established an ironclad ritual, the voluntariness of a confession was judged by the "totality of the circumstances." Under that standard of measurement, no one factor, by its presence or absence, could determine the ultimate issue. Under that "totality" approach:

> " 'The ultimate test remains that which has been the only clearly established test in Anglo-American Courts for two hundred years: the test of voluntariness. Is the [act at issue] the product of an essentially free and unconstrained choice by its maker?

> If it is, if he has willed to [so act], it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his [action] offends due process.' *Culombe v. Connecticut* [367 U. S. 568, 81 S. Ct. 1860, 6 L.Ed.2d 1037 (1961).] "

After cataloguing the myriad factors, bearing on both the conduct of the police and on the character of the accused, *Schneckloth* concluded:

> "The significant fact about all of these decisions is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances. . . .
>
> Similar considerations lead us to agree with the courts of California that the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."

The Supreme Court rejected flatly the proposition, advanced by the appellant here, that the police must warn the property owner that he has a right to refuse to consent:

> "One alternative that would go far towards proving that the subject of a search did know he had a right to refuse consent would be to advise him of that right before eliciting his consent. That, however, is a suggestion that has been almost universally repudiated by both federal and state courts, and, we think, rightly so. For it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning."

See also *Morgan v. State*, 2 Md. App. 440, 234 A. 2d 762.

*Schneckloth* went even further and pointed out that far from requiring such a warning, it would not even insist that the property owner *know* that he has a right to refuse to

consent in order for the consent to be voluntary. Under the "totality of circumstances" approach, reasoned the Court, such knowledge or lack of knowledge is merely one of the constituent factors in the ultimate "voluntariness" equation.

*Schneckloth* squarely rejected the idea that a *Johnson v. Zerbst*, 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) waiver standard would be applied to consent to search cases. It pointed out that the "intentional abandonment or relinquishment of a known right" measuring rod was enunciated "in the context of the safeguards of a fair criminal trial." It added, "Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection." The Court made clear that the notion of waiver is a flexible one, from right to right, "While we have occasionally referred to a consent search as a 'waiver,' we have never used that term to mean 'an intentional relinquishment or abandonment of a known right or privilege.' " And see *Miller v. Warden*, 16 Md. App. 614, 615-621, 299 A. 2d 862; *State v. McKenzie*, 17 Md. App. 563, 573-574, 303 A. 2d 406. *Schneckloth* then concluded:

> "In short, there is nothing in the purposes or application of the waiver requirements of *Johnson v. Zerbst* that justifies, much less compels, the easy equation of a knowing waiver with a consent search. To make such an equation is to generalize from the broad rhetoric of some of our decisions, and to ignore the substance of the differing constitutional guarantees. We decline to follow what one judicial scholar has termed 'the domino method of constitutional adjudication . . . wherein every explanatory statement in a previous opinion is made the basis for extension to a wholly different situation."

Mr. Mungert was a fully competent adult who ran his own business. He came to the police station on February 4, and there signed a consent to search form for the officers to enter and to search his garage at the rear of Weldon Avenue.

We attach no significance whatsoever to the failure of the police to advise him that he had a right not to consent to the search. Upon our constitutionally mandated, independent review, we are persuaded that, under the totality of the circumstances, the consent was "voluntary."

### Admissibility of Confession

The appellant also contests the admissibility of a damning confession, in which he admitted that a 1966 burgundy Impala automobile on which he was working in the garage in the rear of Weldon Avenue was known by him to have been stolen from the vicinity of Cooks Lane in Baltimore City. The appellant does not contend that he was not given his *Miranda* warnings. Indeed, he acknowledged signing a waiver of rights form. His sole contention, with respect to the confession, is that it was induced by promises of leniency. Sgt. Hughes made it clear that he never made any promises whatsoever to the appellant that he would not fully be prosecuted on this and a companion case. Sgt. Hughes pointed out that the police were making an effort to recover a number of other stolen vehicles. The appellant was informed that if he would give the police information leading to the recovery of other stripped vehicles, he would not be charged on those other cases. It is clear to us, as it was clear to Judge Dorf, that whatever the quid pro quo for other information, there were no promises made inducing a confession in this case.

### Sufficiency of Evidence

Sometime during the night of January 16-17, 1972, Jimmy Roger Horton had his automobile stolen. He ultimately identified the front end and the engine of his automobile. The police found that front end and that engine in the rear of the garage at 1117 Weldon Avenue. The appellant acknowledged in his confession that he knew that some of the automobiles which he was cutting up and working upon were stolen. Mr. Mungert testified that the parts of stolen automobiles recovered by the police were stored and worked on in the garage by the appellant and his brother.

In a case tried before the court without a jury, the test as to whether the trial judge was clearly erroneous in reaching a verdict of guilty on the evidence is whether the admissible evidence adduced at the trial either showed directly, or circumstantially, or supported a rational inference of, the facts to be proved, from which he, as the trier of the fact, could fairly be convinced, beyond a reasonable doubt, of the appellant's guilt of the offense charged and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. *Williams v. State,* 5 Md. App. 450, 459, 247 A. 2d 731; *Metz v. State,* 9 Md. App. 15, 23, 262 A. 2d 331; Maryland Rule 1086.

We hold that the trial judge here was not clearly erroneous in reaching a verdict of guilty.

*Judgment affirmed.*