611 A.2d 1034

**James Wesley RICH and Dana Carlton Rich**

**v.**

**STATE of Maryland.**

**No. 1287, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Sept. 3, 1992.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellants.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before GARRITY, WENNER and HARRELL, JJ.

GARRITY, Judge.

Appellants, James Rich and Dana Rich, along with their brother, Harlan Rich, were tried jointly on drug charges in the Circuit Court for Baltimore City, (Mitchell J.). During the jury trial and after mid-trial negotiations with the prosecutor, appellants waived their right to a jury trial and proceeded on an agreed statement of facts.

Dana Rich was found guilty of use of a firearm during and in relation to a drug crime, possession of cocaine with intent to distribute, and possession of heroin with intent to distribute. He was sentenced to five years without parole

for the firearms violation and to five consecutive years on each of the other convictions.

James Rich was found guilty of use of a firearm during and in relation to a drug trafficking crime and conspiracy to distribute cocaine. He was sentenced to five years without parole for the firearms violation and a concurrent five years on the conspiracy conviction.

Harlan Rich, who elected not to appeal, pleaded guilty to charges of possession with intent to distribute cocaine, conspiracy to distribute cocaine, and possession of a handgun. He received two concurrent ten year sentences, all but five years suspended, on the possession with intent to distribute cocaine and conspiracy to distribute cocaine charges and a three year concurrent sentence on the handgun violation.

We are asked to review whether there was sufficient evidence to convict Dana Rich of possession of cocaine with intent to distribute and to convict James Rich of conspiracy to distribute cocaine. We are further asked to review whether the circumstantial evidence, including the proximity of firearms to the contraband drugs, packaging paraphernalia, and large sums of cash in the rooms adjacent to where appellants were found, was sufficient to show use of the firearms in a drug trafficking crime as opposed to their mere possession for different uses.

## BACKGROUND

On November 3, 1989, Baltimore City police executed a valid search warrant on appellants' parents' three story, four bedroom house, at 716 N. Woodington Road. At the time of the raid, appellants were present, along with five other adults and nine children ranging in age from one to twelve. The first officer in the house found James Rich next to a pit bull in the second floor hallway outside the left rear bedroom and Dana Rich at the doorway of the second floor left front bedroom.

The left front bedroom contained a bed, dresser and closet. Under the mattress in that room police found a 0.22 caliber rifle, two BB rifles, a 0.32 caliber semi-automatic pistol, and an UZI semi-automatic nine millimeter assault weapon. In the pocket of a jacket in the closet of that bedroom was a plastic bag containing 49 ziplock bags of cocaine, 36 glassine bags of heroin bound in a rubber band, a ziplock bag with five small bags of cocaine, and $383. A triple beam scale was on the floor of the closet under some clothing. On top of the dresser there was a box that contained three ziplock bags of white powdery substance, which was later found not to be a controlled substance but which a police expert testified could be used as a "cutting" agent for cocaine or heroin. Also on top of the dresser, empty glassine bags and ziplock bags were found along with a hand held scale. In a dresser drawer there were four empty holsters and two boxes of assorted ammunition. At the foot of the bed was a briefcase that contained empty ziplock bags, and the personal mail and papers of Dana Rich. The searching officer detected a strong odor of marijuana emanating from the briefcase. A TDK cassette case on top of a radiator behind the bedboard contained empty glassine bags and ziplock bags, a small spoon, and thirty five ziplock bags with residue in them. A saber sword was found behind the dresser.

The left rear bedroom had a bed, tall chest of drawers, a dresser, and a closet. Between the mattress and the box spring was a fully loaded 0.38 caliber revolver. On the floor of the closet under a heap of male clothing was a sawed-off shotgun and a sawed-off rifle. In a coat pocket in the closet were three marijuana cigarettes and $34. On the floor next to the bed was a small spoon with residue and burn marks. In the top chest drawer were two bags of marijuana and a plastic bag containing white powder and two smaller ziplock bags containing white powder. The powder was later determined not to be a controlled substance but could be used for "cutting" cocaine according to testimony from a police expert. The top dresser drawer

had a large bag of marijuana, a second drawer had $1075, and a third drawer had $33 and ziplock bags. A variety of ammunition and a speed loading device for a 0.38 caliber revolver and UZI ammunition were found in the dresser, chest of drawers, and in the closet. In the dresser drawers, police also found personal mail and papers of James and Dana Rich and ammunition for the weapons that were in the room.

James Rich proffered that he had lived at that address for at least twenty years, and Dana Rich proffered that he lived at the house at the time of the raid. The doors to both bedrooms where drugs were found were either unlocked or wide open.

## DISCUSSION OF LAW

### I. *Intent To Distribute*

In essence, we are asked to review whether the circumstantial evidence was sufficient to support the convictions. In a case tried before the court without a jury, the test as to whether the trial court was clearly erroneous in reaching a guilty verdict is whether the admissible evidence adduced at trial either showed directly, or circumstantially, or supported a rational inference of, the facts to be proved from which he, or she, as the trier of fact, could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. *Folk v. State*, 11 Md.App. 508, 520, 275 A.2d 184 (1971). A conviction upon a single strand of circumstantial evidence alone is not to be sustained unless the circumstances are inconsistent with any reasonable hypothesis of innocence. *Eiland v. State*, 92 Md.App. 56, 607 A.2d 42 (1992); *West v. State*, 312 Md. 197, 211–212, 539 A.2d 231 (1988). Here, however, we shall examine several facets of circumstantial evidence to support sufficiency.

To convict for possession with intent to distribute, the State must prove possession of the controlled dangerous substance in sufficient quantities to indicate, under all of

the circumstances, an intent to distribute. Md.Code Ann. art. 27, § 286(a). Possession can be constructive or joint. *Folk, supra* 11 Md.App. at 511, 275 A.2d 184. Factors to be considered in determining possession are: 1) proximity between the defendant and the contraband; 2) whether the drugs or contraband were within the plain view or otherwise within the knowledge of the defendant; 3) ownership or some possessory right in the premises; and 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual enjoyment of the contraband. *Folk, supra,* at 514, 275 A.2d 184. We will first analyze the circumstantial evidence against Dana Rich for possession of cocaine and heroin with intent to distribute.

Dana Rich was found at the time of the raid in the doorway of the room in which large quantities of cocaine and heroin packaged for multiple distribution were found along with an array of protective weaponry including an UZI semi-automatic assault weapon. In addition, large quantities of cocaine yet to be packaged for distribution were within a few feet of the doorway in which he stood. Thus, he and the contraband were proximate as to location.

Although the drugs were not in plain view, the packaging paraphernalia, including plastic bags, a hand-held scale, and white powdery substance in three bags on top of the dresser available for "cutting" cocaine or heroin, were all in plain view in his room. A reasonable inference can be drawn that it was his room based on the location of his personal mail and papers found in the briefcase at the foot of the bed along with his position in the bedroom doorway at the time of the raid. Once the reasonable inference is drawn that this was Dana Rich's bedroom, it becomes evident that Dana Rich had knowledge of the drugs, drug packaging paraphernalia, including hand held and triple beam scales, and large number of firearms and ammunition found in his room. Further, appellant proffered that he lived at the raided house. In sum, we believe that the circumstantial evidence fairly supported a reasonable inference that Dana

Rich had knowledge of the cocaine and heroin found in the coat pocket in the closet, and of the guns and drug packaging paraphernalia found in his room. Similarly, these circumstantial facts support his proprietary or possessory interest in the room; in the clothing, including the jacket in his room; and in the house where he resided.

The same type of circumstantial evidence supports a fair inference that Dana Rich utilized the drugs, the white powdery "cutting" agent, the glassine bags for heroin, the ziplock bags for cocaine, the large quantities of cocaine and heroin, plastic baggies, the spoon, and hand held and triple beam scales, all found in his room. Thus, he participated in the enjoyment of the contraband. Appellant did not contest that the quantity of drugs found was sufficient to demonstrate intent to distribute.

## II. *Conspiracy To Distribute*

Conspiracy is defined as the combination of two or more persons, who, by some concerted action, seek to accomplish some unlawful purpose, or lawful purpose by unlawful means. *Mason v. State,* 302 Md. 434, 444, 488 A.2d 955 (1985); *Beard v. State,* 42 Md.App. 276, 284–285, 399 A.2d 1383, *cert. denied,* 285 Md. 727 (1979). In Maryland, a conspiracy is complete without the commission of any overt act in furtherance of the conspiracy. *Jones v. State,* 8 Md.App. 370, 375–381, 259 A.2d 807 (1969). As Judge Orth noted in *Jones* at 377, 259 A.2d 807, on the sufficiency of evidence necessary to prove conspiracy:

> Since the common law gist of conspiracy is unlawful combination, no further overt act is required to constitute the crime. *Harper v. State,* 6 Md.App. 1 [249 A.2d 511 (1969)]. Combination results from an agreement. But conspiracy is the combination resulting from the agreement, rather than the mere agreement itself. However, there must be a meeting of the minds—a unity of design and purpose—to have an agreement, but it is not necessary that a formal agreement be shown. It need not be manifested by any formal words, written or spoken. "It

is enough if the parties tacitly come to an understanding in regard to the unlawful purpose, and this may be inferred from sufficiently significant circumstances, although evidence which merely creates suspicion will not be adequate." *Perkins, supra,* at p. 530. In *Seidman v. state,* 230 Md. 305, 322 [187 A.2d 109 (1962)], the Court said: "A conspiracy may be shown by circumstantial evidence from which an inference of a common design may be drawn and it is not necessary to demonstrate that the conspirators met and agreed in terms to a design and to pursue it by common means." In *Lawrence v. State,* 103 Md. 17, 22 [63 A. 96 (1906)] the Court said: "Concurrence of action on a material point is sufficient to enable a jury to presume concurrence of sentiment, and from this the actual fact of a conspiracy may be inferred."

Circumstantial evidence of a conspiracy is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which any rational trier of fact could conclude beyond any reasonable doubt that the requisite agreement existed. *Wiggins v. State,* 324 Md. 551, 566, 597 A.2d 1359 (1991). A conviction for a crime does not preclude prosecution for conspiracy to commit the same crime. *Beard, supra,* 42 Md.App. at 284, 399 A.2d 1383. Further, overt acts in the commission of a crime are relevant evidence of the existence of a conspiracy. *Beard, supra,* at 285, 399 A.2d 1383. We will now review the circumstantial evidence that showed that James Rich shared control of drug packaging paraphernalia, cocaine "cutting" agent, and a large sum of cash that evidenced his concurrent sentiment to help distribute the cocaine found in the house.

He was found with a pit bull by the police raid team in the hallway outside the unlocked or open door to the left rear room. He admits living in the house for twenty some years. His mail was found in the dresser drawer in this room. Other drawers in the same dresser contained a large sum of cash, and empty bags of a type used to package cocaine (i.e. zip-lock bags) and bags containing a white

powder that could be used as a cocaine "cutting" agent, and ammunition for an assortment of powerful firearms including those found in Dana Rich's room. A reasonable inference could be drawn, based on the proximity of James to the room and the location of his personal mail in the drawers with the contraband, that James Rich utilized the dresser and its drawers and thus jointly controlled the contraband found on and in the dresser.

We hold that the circumstantial evidence was sufficient to support a rational inference of James Rich's concurrent intent to distribute cocaine and enjoy the profits, such that the evidence could convince the trier of fact beyond a reasonable doubt of his guilt.

III. *Use Of A Firearm In A Drug Trafficking Crime*

Md.Code Ann. art. 27, § 281A(b) (1987 Repl. Vol., 1991 Cum.Supp.) provides in pertinent part:

> (b) Unlawful acts; penalties.—During and in relation to any drug trafficking crime, a person who uses, wears, carries, or transports a firearm is guilty of a separate felony and on conviction shall, in addition to the sentence provided for the drug trafficking crime, be sentenced as follows:
>
> (1)(i) For a first offense, for a term of not less than 5 or more than 20 years.
>
> (ii) It is mandatory upon the court to impose no less than the minimum sentence of 5 years, no part of which may be suspended and the person may not be eligible for parole except in accordance with the provisions of Article 31B, sec. 11 of the Code ...

Section 281A is part of the "Drug Kingpin Act" that was enacted by Chapter 287, Laws of Maryland 1989, effective July 1, 1989. As originally proposed, the Senate and House bills, SB 400 and HB 502, had provided as follows:

> (B) During and in relation to any drug trafficking crime, a person who uses or possesses a firearm is guilty of a separate felony ...

The briefing document that accompanied the Senate and House bills states, at pp. 11-12:

III.   Use of a firearm in a Drug Trafficking Crime

1.   Why is it necessary to establish that use or possession of a firearm be a separate offense when Article 27, § 36B, already makes it unlawful to use a handgun in the commission of a felony or crime of violence?

The current statute is restricted to handguns.   The proposed bill would include all firearms.   Many drug dealers are using automatic weapons, assault rifles and other firearms that may not fall within the current definition of a handgun.   In addition Article 27, § 36B prohibits the "use" of a handgun.   In the *Wynn* case, the Court of Appeals made it clear that "use" does not pertain to an individual who merely possesses a firearm for possible future use.   The language in this bill prohibits anyone to "use or possess" a firearm during and in relation to a drug trafficking crime.   It would affect an individual who carries a handgun while dealing drugs, even though he does not use it.

2.   Wouldn't this provision make it possible for a person to be convicted, if they distributed a small quantity of marijuana downstairs and had a shotgun on the wall upstairs?

No.   The statute provides that the firearm must be used or possessed "during and in relation to a drug trafficking crime."   That provision requires that a nexus be shown between the use or possession of a firearm and the drug trafficking crime.   If the State cannot establish that the gun was being used or was kept for the purpose of being used to further the drug trafficking crime, then the possession of the firearm would not be covered by this provision.

Appellants note that the committee changes in SB400 and HB 402 reveal that the words "or possesses" was dropped and in their place the words "wears, carries, or transports" was finally adopted.

Appellants argue that § 281A(b), a penal statute, should be strictly construed. *Briggs v. State*, 289 Md. 23, 421 A.2d 1369 (1981). We note that:

In determining the context of statutory language, we must consider any persuasive evidence

including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Wynn v. State*, 313 Md. 533, 539, 546 A.2d 465 (1988) (citing *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987).

Appellants base their argument upon *Wynn*, where the Court held that, in the context of the art. 27, § 36B(d), which proscribes the "use" of a handgun in the commission of a crime of violence, that the firearm must be actively used and not merely carried. Coupling the § 281A(b) legislative briefing document explanation (above) with this holding, appellants conclude that the Legislature's intent was not to restrict the mere possession of a handgun during and in relation to a drug trafficking crime, but *only* the transactional brandishing, firing, wearing, carrying, or transporting of a firearm during and in relation to a drug trafficking crime. We disagree.

In *Wynn*, the defendant carried a fully loaded 0.38 revolver during a housebreaking but did not actively employ the gun in the sense of force or intimidation. The Court held that the defendant did not "use" the gun as the Legislature contemplated in § 36B(d), but such action constituted the lesser crime proscribed in § 36B(b), which made it illegal to "wear, carry, or transport any handgun," unrelated to any other criminal activity. *Wynn, supra*, 313 Md. at 545, 546 A.2d 465.

Thus, the gun carrying activity reviewed in *Wynn,* if applied to use in a drug crime, would violate the proscription of art. 27, § 281A(b), which includes "wears, carries, or transports," the same as such activity associated with a crime of violence violated art. 27, § 36B(b). We believe that the Legislature made it clear that it was trying to avoid the result obtained by the Court of Appeals in *Wynn* when art. 27, § 281A(b) is applied to "use" of a handgun during and in relation to a drug trafficking crime.

The complete inapplicability of *Wynn,* to the facts *sub judice,* was specified by the Court in *Wynn,* wherein it stated:

> The separate treatment of the carrying and wearing of a handgun in one instance, and the use of a handgun in another, convinces us that if the Legislature had intended for the use of a handgun to encompass the conduct in this case it would have expressly so provided. *As we see it, the Legislature would have drafted § 36B(d) so as to specifically proscribe the "carrying, wearing, transporting, or use" of a handgun in the commission of a crime of violence.*

*Wynn, supra,* at 542, 546 A.2d 465 (emphasis added). That is exactly what the Legislature did for drug trafficking crimes.

Based on the foregoing, we believe that the legislative history and formulation of statutory language in art. 27, § 281A(b), as compared to art. 27, §§ 36B(b) and (d), in reaction to the holding in *Wynn,* demonstrate that the Legislature intended that the State need prove only a nexus between the use of the firearm and the furtherance of the associated drug trafficking crime. *See,* SB 400 and HB 502 briefing document at p. 12 (reviewed supra); *Wynn, supra,* at 543, 546 A.2d 465 ("Uses" means ... "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." The obvious legislative intent to deter users during the specified felonies requires that "uses" be broadly construed) (citing

*People v. Chambers,* 7 Cal.3d 666, 102 Cal.Rptr. 776, 498 P.2d 1024 (1972)).

In this regard, we are attentive to the rules of statutory construction and interpretation cited in *Wynn:*

> The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of whole remaining language ... [nor] does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers. (Citations omitted).

> Further, it has been said that "where meaning of the applicable penal statutes is in doubt, the courts must weigh the interests of the individual against the interest of the public. Where public or social interest in penal legislation is especially great, the policy of giving penal laws a very strict construction may be relaxed." 3 Sutherland, *Statutory Construction* § 59.05, at 33 (4th ed. 1986), *citing Allen v. State,* 18 Md.App. 459 [307 A.2d 493] (1973).

*Wynn, supra,* 313 Md. at 540, 546 A.2d 465.

In reviewing the Legislature's intended interpretation of the word "uses," we shall review the case law interpretation of the analogous federal statute of which the Maryland Legislature was surely cognizant. As noted by the appellants:

> Section 281A(b) was based, at least in part, on 18 U.S.C. § 924(c)(1), which provides:

> "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years ..."

A broad interpretation of "use" of a firearm in relation to a drug trafficking crime is supported by most of the federal

cases that considered the meaning of the term in 18 U.S.C. § 924(c)(1). *E.g., United States v. Brown*, 915 F.2d 219, 224 (6th Cir.1990) (defendant's admission he carried pistol to protect curbside drug sales sufficient to show use); *United States v. Duke*, 940 F.2d 1113 (8th Cir.1991) (where two guns were found in house where defendant stored and processed drugs, it is enough if availability increased likelihood criminal undertaking would succeed); *United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985) (firearms found in same apartment with large amounts of cocaine and cash sufficient to show use); *United States v. Lucas*, 932 F.2d 1210, 1223 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 199, 116 L.Ed.2d 159 (1991) (firearms in bench seat and above refrigerator sufficient to show use to protect cocaine and cash in house, citing *United States v. Matra*, 841 F.2d 837 (8th Cir.1988) (machine gun under water mattress sufficient to show use to protect cocaine); *United States v. Curry*, 911 F.2d 72, 80 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991) (where two firearms found in different rooms than the large quantity of cocaine, intended use to protect drug operation was permissible inference); *United States v. Paz*, 927 F.2d 176 (4th Cir.1991) (convictions affirmed where police found drugs, money, and gun under mattress); *United States v. Smith*, 914 F.2d 565, 567 (4th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991) (sufficient "use" if firearm's presence is for protection and facilitates success); *United States v. Vasquez*, 909 F.2d 235, 239 (7th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991) (convictions upheld where two guns were kept in trunk with cocaine stash in unused car in locked garage); *United States v. Meggett*, 875 F.2d 24 (2d Cir.), *cert. denied*, 493 U.S. 858, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989) (conspiracy is a drug trafficking crime and presence of firearms in apartment where drugs were stored and procured was a "use" of them in connection with conspiracy, although object of conspiracy was distribution outside of apartment); *United States v. Anderson*, 881 F.2d 1128,

1141 (D.C.Cir.1989) (gun under mattress used to protect drugs and paraphernalia in another bedroom); *United States v. Torres–Medina,* 935 F.2d 1047 (9th Cir.1991) (firearm need not be readily accessible if gun was proximate to defendant at any time during commission of crime); *United States v. Bullock,* 914 F.2d 1413, 1416 (10th Cir.1990) (gun is "used" when the defendant had ready access; it is an integral part of the criminal undertaking and facilitates the success of the undertaking).

We agree with the position taken by the First Circuit in *United States v. Hadfield,* 918 F.2d 987, 998 (1st Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991). There, the Court stated:

In our judgment, the critical concern is the presence or absence of a facilitative nexus: in a so called "drug fortress" case, where a firearm is found proximate to drugs, money, and related accoutrements, the question is whether the placement of the weapon was designed to facilitate the narcotics enterprise, by, say, protecting against untoward contingencies or safeguarding the cache of drugs. It is reasonable, we think, if an operable firearm is found in close proximity to a room or rooms in which drug distribution, processing, or storage occurs, for the factfinder to conclude that the defendant knew the gun was there and intended it to be available for use in connection with the predicate offense.

Further, a similar rule has been applied by the Fifth Circuit in fortress cases, where, as in the case *sub judice,* a large number of guns were found with large amounts of cocaine and money. *United States v. Robinson,* 857 F.2d 1006, 1010 (5th Cir.1988); *accord, United States v. Onick,* 889 F.2d 1425 (5th Cir.1989) (jury could infer that numerous guns held in house served to protect drugs and money).

The trial court, based on the location of the guns in Dana and James Rich's rooms, which contained their personal mail and papers along with cocaine, heroin, marijuana, cutting material, and packaging paraphernalia, could have

fairly and reasonably concluded that defendants knew of the presence of the sawed-off rifle and shotgun, UZI semi-automatic assault weapon, semi-automatic pistol, array of pistols including a fully loaded 0.38 revolver, and intended that the guns remain present for use in protecting their conspiracy and possession of large quantities of packaged and unpackaged cocaine and heroin and cash from its sale. Thus, we hold the trial court did not err in finding that the appellants violated Art. 27, § 281A(b).

Appellants urge us to adopt a similar statutory interpretation to that adopted in *United States v. Feliz–Cordero,* 859 F.2d 250 (2nd Cir.1988). There the Second Circuit concluded:

> The legislative history of the 1984 amendment indicates that the "in relation to" language was intended to make explicit that a person could not be prosecuted under section 924(c) for possessing a firearm during the commission of an entirely unrelated crime. S.Rep. No. 225, 98th Cong., 2d Sess. 1, 314 n. 10 (1983), reprinted in 1984 U.S.Code Cong. & Admin.News 3182, 3492 n. 10. Thus, section 924(c) requires more than mere possession of a firearm and the underlying crime is established "if from the circumstances or otherwise it could be found that the defendant *intended to use the gun* if a contingency arose or to make his escape." *Id.* (emphasis added).

> Based on the foregoing analysis, in order for possession of a firearm to come within the "uses" provision of section 924(c), one of the following is required: i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction; or ii) the circumstances surrounding the presence of a firearm in a place where drug transactions take place suggest that it was strategically located so as to be quickly and easily available for use during such a transaction. 859 F.2d at 254.

That Court went on to hold that:

In the present case, the presence of a firearm in a dresser drawer does not meet any of the requirements set out above. On the evidence presented, there is no basis to conclude that the gun would have been quickly accessible if needed. Rather, under the circumstances of this case, the intent to use the firearm must be presumed from the fact that a loaded gun was found in the same room as drug paraphernalia during the course of a search pursuant to warrant. This is not sufficient evidence to sustain a conviction, even in light of our recognition of the frequent connection between firearms and narcotics trafficking.

Unlike the weaponry discussed in *Feliz–Cordero*, appellants in the case *sub judice* had a sawed-off shot gun and rifle and a fully loaded 38 revolver within a few quick steps should there be a need to defend the cash and cocaine located nearby. Drug traffickers of illicit addictive drugs, such as cocaine and heroin, must protect their illicit operations and cash from the violence of other such desperate individuals who desire not only their drugs and profits, but territory as well. Thus, we believe, it was entirely appropriate for the trier of fact to look not only to the location of the drugs but the firepower of the guns employed to protect the large quantities of cocaine, heroin, and cash in determining the purpose for potential use of the weapons, i.e., was it on the premises for an unrelated use or to dissuade those who would interfere with the appellants' criminal drug trafficking operations. Considering the firepower found in appellants' bedrooms and the ready accessibility of the guns in either fully loaded condition or under a few articles of clothing, the conclusion that the sawed-off rifle and shot gun, loaded 38 revolver, UZI semi-automatic assault weapon, and semi-automatic pistol were located very close to the drugs and the habitat of the defendants so as to protect their criminal cocaine trafficking enterprise is inescapable.

JUDGMENTS AFFIRMED: COSTS TO BE PAID BY APPELLANTS.