646 A.2d 1095

**Gordon COLIN & Orville Heath**

v.

**STATE of Maryland.**

**Nos. 1508, 1511, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Sept. 1, 1994.

Certiorari Denied Dec. 16, 1994.

Nancy M. Cohen, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellants.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Before MOYLAN, ALPERT and CATHELL, JJ.

ALPERT, Judge.

This appeal presents us with an interesting and perplexing issue as yet undecided by a Maryland appellate court: whether the operator of a rented automobile who is not listed in the rental agreement as an authorized driver and is specifically precluded from driving the automobile has standing to challenge the constitutionality of the search of that automobile. We shall hold that the person in this situation does not have standing.

Appellants, Gordon Colin and Orville Heath were charged with possession with intent to distribute cocaine, possession of cocaine, and possession of marijuana. On May 21, 1993, Heath's motion to suppress was denied by Judge D. William Simpson. At a subsequent jury trial in the Circuit Court for Wicomico County, Heath was convicted of all three counts while Colin was convicted of the possession and possession

with intent to distribute cocaine. The cases were consolidated for appeal and the appellants ask us:

1. Did the trial court err in denying Appellant Heath's motion to suppress physical evidence? [1]

2. Was the evidence sufficient to sustain Appellants' convictions?

## Motion to Suppress

*Facts*

The facts, as developed during the motion to suppress, are as follows. On October 5, 1992, Heath was driving an automobile with Virginia tags when he was pulled over by Deputy Mike Houck of the Wicomico County Sheriff's Office. Colin was seated in the front passenger seat. Houck testified that Heath cut in front of the Deputy's police car causing him to "slam" his brakes. The Deputy activated his emergency equipment and conducted a traffic stop. Houck asked Heath for his driver's license and registration. Heath produced a Connecticut driver's license and a rental agreement between Enterprise Rental Car and Wanda Harrold, a resident of Hampton, Virginia. The agreement did not list either Heath or Colin as other authorized drivers.[2] Heath, however, informed the Deputy that Ms. Harrold was his girlfriend and that she had given him permission to drive the car.

Deputy Houck then asked Heath if he had "any large amounts of C[ontrolled] D[angerous] S[ubstance] or any weapons in the vehicle, and if [Heath] minded if I searched?" Heath allegedly responded, "No, go ahead and search." [3] The

---

1. On appeal, appellant Colin does not raise a Fourth Amendment issue.

2. The rental agreement specifically mentions that "A violation of the contract shall exist if the car is used or driven: ... [e] By any person other than Renter [Harrold] without written consent of Owner." Thus, by agreement, Harrold, as the renter of the automobile, was the only authorized driver and all other drivers were unauthorized.

3. At the hearing on the motion to suppress, both Colin and Heath asserted that neither one of them consented to the search of the car.

Deputy then requested back-up and had appellants exit the car. Officers Harbin, Holland, and Thompson arrived shortly thereafter. Deputy Holland watched appellants while the other officers proceeded to search the car.

After searching the trunk of the car, Sergeant Harbin began searching the interior of the car. The officer observed that the cover plate on the ashtray in the right rear passenger door was "cock-eyed." Harbin obtained a Phillips screwdriver from Deputy Holland and "removed the cover plates on the door panel." The inside of the door was hollow and empty. Harbin then proceeded to the left door and inspected the rear armrest. He noted that "[o]n the same cover plate [of the ashtray], there was one singular chrome colored screw that holds that plate on. The top of the screw [had] a Phillips head. The edges were flaired [sic] as if a screwdriver had been used on it and attempted to tighten it up too much in the direction of tightening the screw." The officer removed that plate and saw "gray foam insulation inside the door panel." He then pushed the foam aside and discovered "a brown, a very, very dark brown colored plastic" bag. The officer attempted to retrieve the bag from the ashtray opening but found it to be a "very, very tight fit." Accordingly, the officer removed three screws from the door panel and recovered the bag. The substance in the bag was later identified as cocaine with a street value of up to $25,600.

*Discussion*

Heath asserts that the court erred in denying his motion to suppress on two separate grounds. First, he contends that contrary to the court's findings, he did have standing to raise a Fourth Amendment claim. Second, he maintains that the scope of the search exceeded the limits of the consent.[4]

*Standing*

It is uncontroverted that Heath was driving a rental automobile that belonged to Enterprise and had been leased by

---

4. Since we shall hold that Heath does not have standing to raise a Fourth Amendment claim, we shall not address the second issue.

Ms. Harrold. Heath asserts that he had a reasonable expectation of privacy in the automobile and can therefore raise a Fourth Amendment claim challenging the search of the automobile. The trial court concluded that because Ms. Harrold was the lessee of the automobile and that neither of the appellants were listed as authorized drivers, Ms. Harrold had breached her contract with Enterprise. Specifically, the trial court reviewed the evidence and noted that

> [Heath] was the driver of the vehicle. The State has raised the issue of standing. The burden is on [Heath] to show that he did have standing. The rental agreement, according to the evidence the Court has before it, shows that a vehicle was rented to a person by the name of Wanda Harrold, and under the terms of the rental agreement, no other driver was allowed to operate the vehicle other than Wanda Harrold.

> There has been no contradictory evidence to that, and although this is not a stolen vehicle, under the evidence I have before me, it is being operated by someone who is not the lessee of the vehicle and not the person who has a right to operate the vehicle under the terms of the rental agreement, and that although Wanda Harrold, under the evidence, very well could have given permission to operate the vehicle, Wanda Harrold, under the terms of the lease did not have the right nor the authority to give permission to operate the vehicle, and the Court finds that there was no standing by Mr. Heath anymore than the thief of a vehicle would have had standing to object to a search of a vehicle.

On appeal, Heath asserts that the trial court's decision was in error because "Harrold's contractual promises to Enterprise, however, [do] not impact upon [his] reasonable expectation of privacy in a vehicle of which he was legitimately in possession." The State asserts that Heath's Fourth Amendment rights were not violated because he did not "enjoy lawful possession or custody" over the automobile. We agree with the State and explain.

 It is clear that one must have a legitimate and reasonable expectation of privacy in an automobile in order to claim standing to challenge a search of that vehicle under the Fourth Amendment. *See Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). This is because, by its terms, "the Fourth Amendment protects people, not places" *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), and a Fourth Amendment claim cannot be asserted vicariously. *Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425 ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") (citing *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969). *See also Lopata v. State,* 18 Md.App. 451, 452–53, 307 A.2d 721 (1973) ("It is not enough for a defendant to show that someone's constitutional rights have been violated; he must show that *his* constitutional rights have been violated." (Emphasis in the original)), *cert. denied,* 269 Md. 762 (1973).

 In order for a person to have a legitimate and reasonable expectation of privacy in an area, two factors are required. In *Liichow v. State,* 288 Md. 502, 511, 419 A.2d 1041 (1980), the Court of Appeals explained:

> The traditional test for determining whether a person's interest in personal property is constitutionally protected from an unreasonable search is whether he has an actual expectation of privacy in the property, and whether that expectation is one which society would recognize as reasonable.

*See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (noting that the first inquiry is whether the defendant "by his conduct, has 'exhibited an actual (subjective) expectation of privacy'" and the second inquiry "is whether the [defendant's] subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable." '") (quoting *Katz v. United States,* 389 U.S. 347, 351, 361, 88 S.Ct. 507, 511, 516, 19 L.Ed.2d 576 (1967)). Thus, the defendant must have a subjective reasonable expectation of privacy in

the area searched and this expectation must be one that the State is willing to recognize as reasonable. Here, Heath obviously asserts that he had a subjective expectation of privacy. Our analysis, therefore, focuses on the second step. The key to the second step depends upon the relationship of the individual claiming standing to the owner of the vehicle. We have held previously that even though a thief does not have standing to challenge the constitutionality of a search of the stolen automobile, *Palmer v. State,* 14 Md.App. 159, 169, 286 A.2d 572 (1972), a passenger in a taxicab does have standing to challenge the search of the common area of that taxicab. *Bates v. State,* 64 Md.App. 279, 287, 494 A.2d 976 (1985). *See also Bowers v. State,* 298 Md. 115, 138, 468 A.2d 101 (1983) (holding that the trial court properly denied defendant's motion to suppress because an unauthorized borrower of an automobile does not possess any "proprietary or rightful possessory interest in the car" and accordingly, does not have standing to challenge the constitutionality of the search), *appeal following remand* 306 Md. 120, 507 A.2d 1072 (1986), *and cert. denied,* 479 U.S. 890, 107 S.Ct. 292, 93 L.Ed.2d 265 (1986). We also note that an individual who uses an automobile with the permission of the owner normally does have standing. *See United States v. Rubio–Rivera,* 917 F.2d 1271, 1275 (10th Cir.1990) (explaining that "[w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle."); *United States v. Garcia,* 897 F.2d 1413, 1417–18 (7th Cir.1990) (noting that the defendant who claimed to have borrowed the automobile from the owner did have standing to challenge the search of that automobile); *United States v. Blanco,* 844 F.2d 344, 349 (6th Cir.), *cert. denied,* 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988) (holding that defendant, listed as an authorized driver on the rental agreement, has standing to object to search of door panels of rented automobile); *United States v. Miller,* 821 F.2d 546, 548–49 (11th Cir.1987) (holding that defendant had standing to challenge search of automobile

borrowed from a friend); *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir.1980) (holding that the defendant had standing to challenge the search of an automobile because he "had both permission to use his friend's automobile and the keys to the ignition and the trunk, with which he could exclude all others, save his friend, the owner."), *cert. denied*, 450 U.S. 1043, 101 S.Ct. 1763, 1764, 68 L.Ed.2d 241 (1981); *United States v. Posey*, 663 F.2d 37, 41 (7th Cir.1981) (concluding that the defendant "had an expectation of privacy in an automobile owned by his wife and over which he was exercising exclusive control pursuant to her permission at the time of the search."), *cert. denied*, 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679 (1982). Additionally, it is established that the renter of an automobile has an expectation of privacy in it and therefore can assert standing. *United States v. Tragash*, 691 F.Supp. 1066, 1070 (S.D.Ohio 1988).

These cases, however, do not fully address the factual circumstances of this case. In the above cases, the car was borrowed or rented from either the owner of the automobile or someone with authority to lend it. In the case *sub judice*, Heath was the driver of a rented automobile which he borrowed from the *lessee* (Harrold). Heath was not listed as an authorized driver on the rental agreement, and he did not produce evidence of any independent agreement with Enterprise allowing him to drive the automobile lawfully. Indeed, the contract between Enterprise and Harrold expressly prohibits the motor vehicle from being driven by any one other than the Renter (i.e., Harrold). We are faced, accordingly, with the question of whether an individual who is not listed on the rental agreement as an authorized driver and specifically precluded by the rental agreement from driving the automobile but has the lessee's permission to drive it has standing to challenge the constitutionality of a search of the vehicle.[5]

---

5. By phrasing the question in this way, we draw a distinction between an "unauthorized user" and a use "not authorized" (specifically prohibited). The instant case is one of a "not authorized" use because the rental agreement specifically prohibited everyone except the listed renter from driving the automobile. Whether a person who is not listed

Our research has not disclosed any controlling Maryland cases. Other jurisdictions have addressed this issue and have concluded that one driving an automobile rented by another has no reasonable expectation of privacy under these circumstances and therefore has no standing to object to a search of that vehicle. For example, in *United States v. Obregon,* 748 F.2d 1371, 1375 (10th Cir.1984) the court held that the defendant, who was in sole possession of a vehicle rented by another, did not have standing to challenge the search of that vehicle. In so holding, the court quoted with approval the district court's findings that

> Defendant had the keys to the car and may have had permission from the renter of the car to use it, but this is not determinative of the standing inquiry in this case. Defendant was driving a rented vehicle and was not named on the rental agreement or any other documents, either as the renter or as an authorized driver. Defendant made no showing that any arrangement had been made with the rental car company that would have allowed him to drive the car legitimately.

*Id.* at 1374. Similarly, in *United States v. Boruff,* 909 F.2d 111 (5th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991), the court held that the defendant, who was in sole possession and control of the rented automobile at the time of the stop, did not have any legitimate expectation of privacy in the automobile because, "[u]nder the express terms of the rental agreement, [the renter] was the only legal operator of the vehicle. [The renter] had no authority to give control of the car to [the defendant.]" *Id.* at 117. Under similar facts, other courts are in accord with this result. *See United States v. Roper,* 918 F.2d 885, 887–88 (10th Cir.1990) (dismissing accused's Fourth Amendment claim because, although he was the driver, "he was not the owner nor was he in lawful possession or custody of the vehicle" because the auto-

___

on a rental agreement but not specifically excluded from use (an "unauthorized user") has standing is a question that we shall save for another day.

mobile was rented by another and the rental agreement did not list the defendant as an authorized driver); *United States v. McConnell,* 500 F.2d 347, 348 (5th Cir.1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1327, 43 L.Ed.2d 424 (1975) (holding that defendant had no legitimate expectation of privacy in a car that was initially rented by a co-defendant with defendant's own credit card, and then lent to defendant with the co-defendant renter's permission); *United States v. Gilmer,* 793 F.Supp. 1545, 1552 (D.Colo.1992) (noting that defendant, who did not rent the car himself and was not listed as an authorized driver on the rental agreement, had no reasonable expectation of privacy); *United States v. Taddeo,* 724 F.Supp. 81, 84 (W.D.N.Y.1989), *aff'd,* 932 F.2d 956 (1991) (holding that defendant, in sole possession of rental car rented by a third party who voluntarily lent defendant the car, has no reasonable expectation of privacy under the circumstances and therefore no standing); *Littlepage v. State,* 314 Ark. 361, 863 S.W.2d 276, 279–80 (1993) (same).

Here, as in *Obregon,* Heath may have had Harrold's permission to use the automobile. This, however, does not diminish the importance of the fact that Heath, according to the rental agreement, did not have any authority to drive the automobile, nor did Heath make any independent showing that he and Enterprise had made any other arrangement whereby Heath could legitimately drive the automobile. Additionally, Harrold was without any authority to give Heath her permission to drive the automobile. Perhaps Heath had a subjective expectation of privacy in the vehicle. But such an expectation of privacy, even if subjectively reasonable to Heath, is not one that we are willing to consider as reasonable; it must be remembered that Heath was precluded from operating the subject rented vehicle. Accordingly, we hold that the trial court was correct in deciding that Heath did not have standing to challenge the search of the vehicle.

### Sufficiency

Appellants contend that the evidence presented at trial was insufficient to support their convictions of possession of co-

caine and possession of cocaine with intent to distribute. Specifically, they contend the evidence was not sufficient to establish knowledge and possession of cocaine. We conclude that the evidence was sufficient in regard to each appellant and therefore affirm.

The standard of review for insufficiency of evidence underlying a criminal conviction "does not require a court 'to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' ... Instead, the standard to apply is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Dawson v. State*, 329 Md. 275, 281, 619 A.2d 111 (1993) (quoting *Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979))) (emphasis in the original); *Johnson v. State*, 303 Md. 487, 510–11, 495 A.2d 1 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986).

In order to sustain a conviction for "possession," the State must prove "the exercise of actual or constructive dominion or control" over the substance. Md.Code, Art. 27, section 277(s) (1957, 1992 Repl. Vol.). The defendant, therefore, "must know of both the presence and the general character or illicit nature of the substance." *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988). Proof of knowledge, however, may be derived from circumstantial evidence and the inferences drawn from such evidence. *Id.* Factors that are to be considered in determining the "knowledge" required for possession are:

(1) proximity between the defendant and the contraband; (2) whether the drugs or contraband were within plain view or otherwise within the knowledge of the defendant; (3) ownership or some possessory right in the premises; and (4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual enjoyment of the contraband.

*Rich v. State,* 93 Md.App. 142, 150, 611 A.2d 1034 (1992), *cert. granted,* 331 Md. 196, 627 A.2d 538 (1993).

## Appellant Colin

Appellant Colin contends that he was not in close proximity to the drug because he was in the front passenger seat whereas the drugs were found in the left rear door interior. He further argues that he was unaware of the presence of the cocaine and therefore never exercised "dominion or control" over the substance.

As a passenger, it may be true that Colin did not exercise "control" over the vehicle. Colin was traveling in the same vehicle as the cocaine, however, and that is sufficient to establish "close proximity." Although the cocaine was not in plain view, being secreted away in the door, this factor is also not determinative. Rather, the circumstantial evidence adds up to a revealing picture. Colin initially told Deputy Houck that his name was "Tony Morris." Testimony revealed that Colin and Heath displayed a nervous response as the officers searched the door where the cocaine was later found. Colin's failure to be truthful to the officer and nervousness as the search progressed closer and closer to the location of the cocaine could reasonably be interpreted as showing that he had something to hide and that he knew where it was to be found. Moreover, as Colin was a voluntary passenger, it may be reasonably inferred that he anticipated "the mutual enjoyment of the contraband." *Rich,* 93 Md.App. at 150, 611 A.2d 1034. Further, from his riding in the vehicle with appellant Heath, it could be reasonably inferred that they wanted to use the drug jointly.

As for the question of intent to distribute, "[t]he element of intent is generally proved by circumstantial evidence." *Collins v. State,* 89 Md.App. 273, 278, 598 A.2d 8 (1991). A large quantity of cocaine in one's possession is circumstantial evidence of intent. *Id.* at 279, 598 A.2d 8. The State was required to prove possession of the controlled dangerous substance in sufficient quantities to indicate, under

**408**

all of the circumstances, an intent to distribute. Md.Code, Art. 27, 286(a) (1957, 1992 Repl.Vol.). Based on the evidence, a rational trier of the fact could have been convinced beyond a reasonable doubt as to appellant's guilt.

### Appellant Heath

Our discussion concerning appellant Colin applies with even greater force to appellant Heath. Due to the evidence discussed above, we are persuaded that a rational trier of fact would be convinced beyond a reasonable doubt as to the guilt of appellant Heath.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.